## JENNY LIND CO. v. BOWER & CO.

Where an ambiguity in an instrument of writing consists in the use of a word which has a settled meaning, but at the same time consistently admits of two interpretations, according to the subject matter in the contemplation of the contracting parties, it is not such a patent ambiguity as falls within the rule forbidding its explanation by parol testimony. It belongs to that intermediate class of cases which partake of the nature both of patent and latent ambiguities.

In an action concerning a disputed boundary between two mining claims, depending on an agreement between the parties, in which the word "north" was used, and parol evidence was admitted to prove that it was the custom of the locality to run boundary lines by the magnetic meridian, and that that was the understanding of the parties : *Held*, that such evidence was admissible, not to contradict or vary the term, but to ascertain the sense in which it was used.

On a motion for a new trial on the ground of newly discovered evidence, the affidavit of one of the defendants as to what an absent witness will testify, is insufficient. It should be accompanied by the affidavit of the witness himself; if that cannot be obtained in time, additional time should be applied for.

Appeal from the District Court of the Eleventh Judicial District, County of Placer.

This was an action to recover damages for an alleged trespass upon the mining grounds of the plaintiffs. The claims of the parties adjoin each other ; and in June, 1857, they entered into a written agreement as to the dividing line between the claims, describing the same as commencing at a designated point, and "*running thence north twenty-three degrees and fifteen minutes west, six hundred and forty-three feet to a pine stake*," and "*thence north forty-five degrees west to Devil's cañon* ;" and the principal question presented by the record relates to the admissibility of parol evidence to show that the last course of the dividing line thus agreed upon was run according to the magnetic, and not the true meridian. It appeared from evidence allowed on the trial, that it was the general custom at Forest Hill, where the ground in controversy is situated, to run boundary lines by the magnetic meridian ; and from the testimony of a witness present at the execution of the agreement, that it was understood the line was to run "the way the needle points." The cause was tried by a jury, who returned a verdict as follows, to wit: "We, the jury, find for the plaintiffs, and assess their damnges at $3,100. We further find, that the lines mentioned in the agreement introduced in the evidence in this case were to run by the magnetic meridian." Judgment was

Jenny Lind Co. *v.* Bower.

entered upon this verdict for the plaintiffs. Defendants moved the Court for a new trial on several grounds, and amongst others, on the ground of "newly discovered evidence, material to the defendants, which they could not with reasonable diligence have discovered and produced at the trial." The motion was supported by the affidavit of Marshall, one of the defendants; setting forth that since the trial of the cause, one Hoffman had informed him that he would testify to certain facts, which facts are set out in the affidavit; but affiant being ignorant of the law, did not know that Hoffman's affidavit as to what he would testify to was necessary, until it was too late to procure the same in time for the hearing of the motion. The affidavit sets out the residence of Hoffman, and alleges that if a new trial is granted, defendants will be able to produce his testimony at the trial.

The Court below overruled the motion, and the defendants appealed to this Court.

*Thos. H. Williams* for Appellants.

The Court erred in permitting parol evidence of the agreement made by the parties to this action, which was reduced to writing and signed by the parties.

2d. The Court erred in permitting proof of custom which varied the terms of the agreement referred to.

3d. The Court erred in not granting a new trial upon the ground of newly discovered evidence.

Authorities: Chitty on Contracts, pp. 107, 109, 80, 81, 106, and 107 ; 1 Peters' Rep., p. 591 ; 1 Greenleaf on Ev., pp. 351, 352, 356, 367, and 377 ; 1 John. 192; 2 Sumner, 568 ; 7 Yerger, 340 ; 3 Grattan, 262 ; 2 Wheat. 316 ; Doe *v.* Lea, 11 East. 312 ; 11 Mass., pp. 30 and 31 ; Wood's Dig., p. 701, sec. 10.

*Hillyer* for Respondents.

No clear case of a *latent ambiguity* ever existed.

The evidence excepted to was proof by plaintiffs, offered to show in which sense the parties used this term, by showing: *First*, the usage upon Forest Hill, generally, in speaking of a course ; *Second*, a con-

versation between plaintiffs and defendants showing how they understand it.

The books are full of cases sustaining the admissibility of each of these classes of evidence in similar cases. We shall refer to only a few.

1st. As to usage and custom of the particular district, 1 Greenleaf on Ev., secs. 292 and 295. The author in this last section speaks of the present case at bar — a word having two meanings, one technical and one common. C. and H., Notes to Phillips on Evidence, part 2, vol. 4, p. 505, part 2, note 954; Ashton *v.* Insurance Co., 7 Cowen, 202; 12 Wendell, 573; 2 Sumner's Rep. 569. In this case, Judge Story says parol proof may be admitted to ascertain the true meaning of a particular word, or words, in a given instrument, when the word or words have various senses — some common, some qualified, and some technical. 3 Barn. & Adol. 728; 4 N. & M. 602.

2d. As to the admissibility of the conversation between the parties to prove their understanding of the term. Waterman *v.* Johnson, 13 Pick. 261; Stone *v.* Clark, 1 Metcalf, 380; Birch *v.* Deipster, 4 Camp. Rep. 385; Gray *v.* Harper, 1 Story's Rep. 574; Ballenger *v.* Eckett, 16 Levy & Rowel, 422; Selden *v.* Williams, 9 Watts' R. P. 14.

The above cases are all directly to the point, and sustain the admission of the evidence. Should the Court desire to look further, we cite: Doe *ex* Denn Gord *v.* Nud, 2 M. & W. 129; Osborne *v.* Wise, 7 Carr & Payne, 761; 5 Pick. 34; 8 John. R. 116; 1 Mason, 10; 4 Hemming & Mumford, 283; 3 Rand. 83; Woods *v.* Lee, 5 Monroe, 59; 5 Mills & Law. R. 275; C. & H. Notes to Phillips, part 2, vol. 4, p. 535.

The Court will notice that the evidence was introduced, not to show what *agreement the parties intended to make, but to show what agreement they did make.*

The thing to be proved being, "how did the parties understand this term when they used it," can there be any better evidence of this than direct admissions by Phillips, one of the defendants, as to how it was understood?

The distinction in all the cases is this: you are not allowed to

Jenny Lind Co. *v.* Bower.

prove an *express intention* different from the agreement, or to vary it; but are allowed to prove, by *any competent evidence, how the parties understood the ambiguous term.*

As to the affidavits of Marshall, one of defendants, concerning what Hoffman will testify:

1st. The Court cannot consider Marshall's affidavit, but Hoffman's should have been procured.    Vol. 3, G. and W. on New Trials, 1,065.

FIELD, J., delivered the opinion of the Court—BALDWIN, J., concurring.

This is an action to recover damages for an alleged trespass upon the mining ground of the plaintiffs.    The claims of the parties adjoin each other, and in June, 1857, the parties entered into a written agreement as to the dividing line between their claims, describing the same as commencing at a designated point, and "*running thence north twenty-three degrees and fifteen minutes west, six hundred and forty-three feet to a pine stake,*" and "*thence north forty-five degrees west* to Devil's cañon;" and the principal question presented by the record relates to the admissibility of parol evidence to show that the last course of the dividing line thus agreed upon was run according to the magnetic and not the true meridian.    It appeared, from the evidence allowed on the trial, that it was the general custom at Forest Hill, where the ground in controversy is situated, to run boundary lines by the magnetic meridian, and from the testimony of a witness present at the execution of the agreement, that it was understood the line was to run "the way the needle points."    It is true, parol evidence is inadmissible to contradict or vary the terms of a written agreement; but we do not perceive that the rule was violated in the present case.    It was not to contradict or vary the meaning of the term *north* that the evidence was admitted, but to ascertain the sense in which it was used by the parties.    The term has two meanings, one common and the other technical.    Unprofessional men generally mean, in stating courses, the lines indicated by the compass, without making any allowance for variation in the needle; and even professional Surveyors, as appears from the evidence in the case, would not consider the true meridian as intended, unless specially so informed.

The language of every instrument should be so construed, if possible, as to effectuate the intentions of the parties; and to ascertain the meaning attached to particular words, when such words are used in various senses, parol evidence is perfectly legitimate. And this evidence is received to explain, and not to contradict or vary the written language. The patent ambiguity, which according to the rules of Lord Bacon cannot be aided by averment, arises from uncertainty upon the face of the instrument in the application of the terms used, and not from uncertainty in the meaning of the terms themselves, when those terms are susceptible of two meanings. (See 2 Parsons, 69, and note.) In the present case the ambiguity lies in the word north; and yet it is not within the rule laid down by Bacon. It belongs to that " intermediate class of cases," of which Mr. Justice Story speaks in Peisch *v.* Dickson, (1 Mason, 11) " which partake of the nature both of patent and latent ambiguities ; and that is," where the words are all sensible and have a settled meaning, but at the same time consistently admit of two interpretations, according to the subject matter in the contemplation of the parties. In such a case, I should think," says the Justice, "that parol evidence might be admitted, to show the circumstances under which the contract was made and the subject matter to which the parties referred. For instance, the word ' freight ' has several meanings, in common parlance ; and if by a written contract a party were to assign his freight in a particular ship, it seems to me that parol evidence might be admitted of the circumstances under which the contract was made, to ascertain whether it referred to goods on board of the ship or an interest in the earnings of the ship ; or in other words, to show in which sense the parties intended to use the term." (Goddard *v.* Bullow, 1 Nott & McCard ; Smith *v.* Wilson, 3 Barn. & Adol. 728 ; Heald *v.* Cooper, 8 Greenl. 32 ; Clayton *v.* Gregson, 4 Ner. & Man. 602.)

And Cowen and Hill, after referring to the illustration given by Mr. Story, observe that this and other instances of a kindred character " fall exactly within the general definition of a patent ambiguity. The terms used have in themselves a doubtful meaning, and consistently admit of more than one interpretation, according to the subject matter in contemplation of the parties. The ambiguity is not *latent* in

any proper sense; it arises from the known infirmity of language; it is inherent in the instrument; appearing on its face, and evincing a difficulty at the very moment of perusal.    And yet it admits of explanation.

" It will not do to say, therefore, that a patent ambiguity (meaning thereby merely an ambiguity patent or appearing on the face of the instrument) cannot be explained by evidence *aliunde;* though such remarks are frequently found in the books."    (Notes to Phillips, part II, note 269.)

The motion for a new trial was properly overruled.    The position of the boundary line was the principal question in the case, and upon this point several surveyors were examined, and upon their conflicting testimony the jury passed.    The subsequent survey of one of the surveyors would only have corroborated the testimony of the defendants' witnesses, and correspondingly weakened the testimony adduced by the plaintiffs.    We do not perceive that it would, taken in connection with the different starting point from the first survey, have materially changed the result.

Each of the surveyors testified to using the utmost care, and each was of opinion that his survey was correct.    The Court below was in a better position to judge of the effect of Brewster's testimony in the case, and the probable result of his evidence after the second survey, than this Court, and we do not feel warranted in disturbing its action in the premises.

The affidavit of Marshall, as to the testimony which Hoffman would give, should have been accompanied by Hoffman's affidavit.    Hoffman's absence at his residence at Forest Hill, and the consequent inability of Marshall to obtain the affidavit in time, was not a sufficient excuse for its non-production.    If necessary, application should have been made to the Court for additional time to obtain and file it.

Judgment affirmed.