# CHARLESTON.

JOHN W. EDWARDS v. THE MASONIC MUTUAL LIFE ASSOCIATION.

Submitted April 20, 1920.     Decided May 4, 1920.

1. INSURANCE—*It May Be Assumed That Agents Have Greater Knowledge As to Construction of Contracts Than Others.*

   From the necessity of the case insurance companies deal with the public through agents, and in such dealings it is reasonable to assume that such agents possess fuller and more complete knowledge as to the interpretation placed upon their contracts by the company than those not connected therewith. (p. 342).

2. SAME—*Insurer is Estopped to Deny That Clause of Policy Does Not Mean What It's Agent Represented it to Mean.*

   Where a clause, attached to an insurance policy, is by any reasonable construction to any extent ambigious, and the agent of the company soliciting the insurance represents to one applying for such insurance that the company construes such clause to have a certain meaning not inconsistent with the language used, and the party so solicited accepts such insurance, relying upon the interpretation placed upon the language by the agent being the one adopted by the company, the company, will, after a loss has accrued under such policy, be estopped to deny that the clause does not mean what its agent represented it to mean.   (p. 342).

(LYNCH, JUDGE, Absent.)

Error to Circuit Court, McDowell County.

Action by John W. Edwards, administrator of Frank C. Edwards, deceased, against the Masonic Mutual Life Association. Verdict for plaintiff was set aside, and he brings error.

*Reversed and judgment for plaintiff.*

*Anderson, Strother, Hughes & Curd,* for plaintiff in error.
*James P. Schick* and *W. K. Cowden,* for defendant in error.

RITZ, JUDGE:

This suit was instituted by John W. Edwards, administrator of the estate of Frank C. Edwards, deceased, to recover the indemnity provided by two policies of insurance issued by the

defendant to the plaintiff's decedent in the month of August, 1917. Upon a trial in the circuit court a verdict was rendered by the jury in favor of the plaintiff for the amount of such policies with the interest accrued thereon to the date of the verdict, which verdict was, however, upon motion of the defendant, set aside, and it is from this judgment setting aside the verdict that this writ of error is prosecuted.

It appears that plaintiff's intestate was solicited by an agent of the defendant to take insurance from the defendant company, and pursuant to this solicitation applied for the two policies sued on. At the time he applied therefor he had been enrolled, examined by a physician, and declared subject to be drawn for military service in the late war under the selective service law, but at that time had not actually been drawn for induction into such service. These facts were explained to the agent who solicited the insurance at the time, as admitted by him. When the policies came they had attached thereto what is denominated a "war clause" which is as follows: "If within five years from the date of this policy the member shall engage in any military or naval service in time of war, the liability of the Association in event of the death of the member while so engaged, or within six months thereafter, will be limited to the return of the premiums paid hereon, exclusive of any extra premium paid for military or naval service, less any indebtedness to the Association hereon; unless before engaging in such service or within the thirty days of grace thereafter, or at the time of paying the first premium due hereon, if the member shall be then so engaged, the member shall pay to the Association at its home office in Washington, D. C., an extra annual premium of $30.00 per thousand, and in like manner shall pay annually thereafter while the member shall continue to be so engaged, such extra premium as may be required by the Association, provided, however, that the liability of the Association in event of the death of the member, while engaged in any military or naval service in time of war outside the continental limits of the United States (the waters within fifty miles of the coast line), or within six months thereafter, shall be 50 per cent of the amount otherwise due under this policy.

"As of each anniversary of the assumption of the extra risk, the Association will fix the extra premium for the following year. The premium is payable annually in advance but the member shall have the right to pay the extra premium in the same manner as he pays the regular premium.

"Within one year after the termination of the war, the Association will make a special accounting for such extra premiums collected and will distribute such portion of the extra premiums as in its judgment will not be required to cover the extra hazard, as an increase in the payment of claims that may have been reduced in accordance with the foregoing or as a return of savings to this class of members, all on such basis as the Board of Directors may decide." The agent of the defendant company testifies that he explained to the insured that there would be attached to the policies a war clause, and he explained to him the nature of this clause and the effect of it. He says that he was familiar with the war clause used by the company, and that he believed he understood the construction placed thereon by the defendant. It was expected that the insured, if called into the military service, would first be required to spend sometime in training before being sent abroad into the active service, and the agent of the company testifies that he informed the insured that the correct construction of the war clause, and the construction placed thereon by his company, was that while in such preparation camps the men were not engaged in the military service; that until they were started abroad to actually engage in the war then being waged they were not engaged in military service within the meaning of the war clause, and he says that he believed that that was the meaning of it at the time he made these representations. Upon these representations the insured accepted the policies and paid the premiums provided therefor. In the month of May, 1918, he was drawn under the selective service act for military service and was sent to Camp Lee, Virginia, for training, and while there, in the month of October, 1918, contracted influenza, from which he died. It appears that while he was at Camp Lee he paid one premium upon each of these policies, being the regular amount provided by the terms thereof, and sent the same to the general agent of

the company in a letter. His father testifies that all of the letters that he received from him bore upon the envelope an indication that he was in the military service at that camp, but there is no evidence as to what, if any, notations were upon the envelope in which this check was enclosed, or whether or not there was a letter accompanying it and transmitting it to the general agent. The general agent is not introduced as a witness, and does not testify upon this question.

It will be noted from the war clause above quoted that for the first year after entering the military service the insured is required to pay an additional premium of thirty dollars. This additional premium was not paid, and when proof of the death of the insured was sent to the company it declined payment of the indemnity provided by the policies upon the ground that it was not liable for such indemnity, the insured having entered the military service, and not having paid the extra premium provided by the war clause. The question presented here is, can the defendant company now say that this war clause defeats a recovery of the indemnity provided by these policies? Admittedly its agent who solicited the insurance in an honest belief that he was telling the truth represented that the true construction of the clause was that Edwards was not engaged in the military service so long as he remained in a training camp in this country, and acting upon that assumption the policies were received. No doubt if Edwards had been informed that this extra premium would be required of him as soon as he was inducted into the military service he would either have refused the policies or else would have paid the extra premium and kept them alive. The fact that he did pay a regular premium while he was in training at Camp Lee shows conclusively that he intended to keep these policies alive, and it is fair to assume that the only reason that he did not pay the thirty dollars extra premium was because of the representations made to him by the defendant's agent.

In *Parker* v. *North American Accident Ins. Co.*, 79 W. Va. 576, we held that an accident insurance company was estopped by the act of its agent who solicited the insurance. In that case the agent was fully informed as to the employment or occupation of the insured, and placed his own construction thereon.

When the insured was killed while engaged in the very employment of which the agent had knowledge, the company attempted to defeat recovery upon the ground that this was a very much more hazardous employment than that mentioned in the policy, but this Court held that the company's agent who solicited the insurance, having been fully informed as to the truth, and having placed the insured in the class mentioned in the policy, it was estopped to deny that he did not belong to that class.

In *Hawkins* v. *South-Western Mutual Fire Ins. Co.*, 80 W. Va. 773, we held the defendant estopped to say that the plaintiff was not the owner in fee simple of the property insured when it appeared that she had told the defendant's agent the exact situation, and such agent construed her interest to be a fee simple interest, when in fact she did not have any such estate in the property.

In the case of *Hotchkiss* v. *Phoenix Ins. Co.*, 76 Wis. 259, 20 Am. St. Rep. 69, it was held that where a local agent of a foreign insurance company insured a dwelling house and personal property therein, attached to which policy was a condition making the same void should the premises become vacant, the company was estopped to say that the premises were vacant at the time of the fire, although unoccupied except that the furniture of the insured still remained therein, because of the fact that its agent had represented to the insured that the true construction of the clause in regard to occupancy was that if the furniture was allowed to remain in the building it would be occupied within the meaning of that clause, notwithstanding no one was living therein.   And in the case of *Highlands* v. *Fire Ins. Co.*, 177 Pa. St. 566, 55 Am. St. Rep. 739, it was held that an insurer of property which had been assigned for the benefit of creditors, whose agent informed the assignee, when requested to make a transfer of the policy, that no such transfer was necessary; that the assignment to him was not such as rendered the policy void under a clause therein rendering it void if the possession, ownership or interest changed, was estopped to say subsequently, after a fire, that such an assignment was effective to render void the policy because of that condition.   The opinions in these cases are based upon the same principle which

is invoked to sustain the plaintiff's right to recover here. The defendant insists that this would change the contract, and that by its very terms no agent is allowed to make any representation which would change or alter it. The answer to this is that such a holding does not change the terms of the contract, but simply defines them. It cannot be doubted that the agents of insurance companies are presumed to have much more accurate and complete knowledge of the proper construction and effect of the policies issued by their principals than those with whom they deal, and that in any case in which the language can be susceptible of more than one meaning a representation made by the agent as to the correct meaning of it, and as to the meaning attributed to it by his company, justifies the insured in acting thereon. *Modern Woodmen* v. *Lawson,* 110 Va. 81. Here is a clause attached to this policy which provides that in order to secure the indemnity therein provided, in case the insured engages in any military or naval service, he must pay an additional premium. Very naturally he would want to know just what is meant by the term, engaged in any military or naval service. It was well known by both the agent and the insured, that in case the insured was selected and inducted into the service there would be a considerable period in which he would undergo training before being sent into the actual service, and he had a right to rely upon the agent having superior knowledge to himself as to what construction the company placed upon this language. In fact, it clearly appears in this case that the agent himself was deceived and honestly believed that it did not cover the service in which the insured was engaged at the time of his death. Whether it does or not is not material. An insurance company necessarily deals with the public through agents, and when an agent authorized to solicit business for the company makes a representation to one applying for insurance as to the meaning or effect given to certain language by the company, and such language is in any wise ambiguous, and such meaning is not inconsistent therewith, the company will not thereafter be allowed to say that such construction is not a proper one when the insured has acted thereon in good faith. It may be that there is enough in this case to justify the jury

in believing that the general agent of this company knew that the insured was engaged in the military service at the time he accepted the last premiums that were paid. It is proven beyond doubt that these premiums were sent from Camp Lee. It is likewise proved beyond doubt that the soliciting agent of the company knew the insured had been inducted into the service, and knew before the policies were issued that he was likely to be so inducted into the service. While it does not appear that there was any letter transmitting the check which was sent in payment of these premiums which would indicate that Edwards was in the military service, the fact that the general agent of the company, to whom it was sent, does not testify in the case, is significant, and creates at least a very strong suspicion that he was informed at the time he received those premiums that Edwards was then in training at Camp Lee.

We are of opinion that Edwards, under the circumstances, had a right to rely upon the representations made to him by the company's agent as to the true interpretation of this war clause, and that having acted thereon in good faith the company is now estopped to say that the interpretation given to it by its agent is not the correct interpretation.

The defendant relies upon the case of *Miller* v. *Illinois Bankers' Life Association,* (Ark.) 212 S. W. 310. That case is not controlling in this case, for the reason that the representation made by the agent as to the meaning of the war clause involved there was made long after the policy had been taken out, and was, therefore, not a part of the negotiations between the parties at the time the insurance contract was entered into.

We will, therefore, reverse the judgment of the circuit court of McDowell county, reinstate the verdict of the jury, and render judgment thereon in favor of the plaintiff.

*Reversed, and judgment for plaintiff.*