[Civ. No. 10962. First Appellate District, Division One.—August 30, 1940.]

FRANCES M. NORTON, Appellant, v. FARMERS AUTOMOBILE INTER–INSURANCE EXCHANGE, Respondent.

R. G. Wilkins and A. Dal Thomson for Appellant.

James W. Hughes, Frank V. Campbell, Walter E. Rankin and Robert E. Hayes for Respondent.

KNIGHT, J.—The plaintiff, Mrs. Frances M. Norton, obtained a judgment for damages in the sum of $8,000 against Mrs. Mabel D. Lyon, on account of personal injuries sustained in an automobile collision between a car driven by Mrs. Lyon and one in which Mrs. Norton was riding. Thereafter Mrs. Norton brought the present action against the defendant insurance company to recover the amount' of the judgment under a policy of insurance issued by said company to Mrs. Lyon's father-in-law, W. P. Lyon, who from the date of the issuance of the policy until his death, which occurred six weeks prior to the accident, was the owner of the car Mrs.

Lyon was driving when the accident happened. Judgment was given for the defendant company and plaintiff appeals. The principal ground urged for reversal involves a ruling of the trial court rejecting certain parol evidence introduced by plaintiff with respect to the question of the construction of the terms of the policy.

The policy was issued to W. P. Lyon on April 14, 1931, and he was named therein as the assured. Besides insuring his automobile against loss by fire and theft it provided property damage insurance not exceeding $5,000 and public liability coverage to a maximum of $100,000. The term of the policy was six months, and premiums for one year were paid in advance. Under the general heading "Property Damage and Liability" the policy insured "Against legal liability imposed upon the insured resulting solely and directly from an accident by reason of the ownership, maintenance, and/or use of the automobile described herein, while the policy is in force, not exceeding the amount specified in Clause F and G, respectively, on account of . . . Clause G—Liability. Bodily injury and/or death suffered or alleged to have been suffered by any person, other than the Insured or those in his household, service or employment, to an amount not exceeding . . . ", etc. And under the next general heading, "Terms and Conditions Forming a Part of This Contract" and the sub-head "(1) Risks Not Assumed By This Exchange" it provided: "The Exchange shall not be liable for loss or damage . . . (D) Caused while the said automobile is being driven or operated by any person other than the Insured or a member of his immediate family or his paid driver; unless said person, otherwise qualified hereunder, is temporarily operating said automobile with the consent of the Insured except that *the extension provided for in this condition shall not be available to:* (1) any public garage, automobile repair shop, automobile sales agency, automobile service station or the agents or employees thereof. . . . " (Italics ours.)

On the date of the issuance of the policy Mrs. Lyon and her husband were and for some time prior thereto had been making their home with W. P. Lyon, and they continued to live with him up to the time of his death, which occurred on November 13, 1931; and during all of that time Mrs. Lyon with her father-in-law's permission drove his automobile. By his will he bequeathed the automobile as part of the residue

of his estate to three testamentary trustees, one of whom was Mrs. Lyon's husband; and following W. P. Lyon's death Mrs. Lyon and her husband continued to live in the decedent's home and with the permission of the testamentary trustees she continued to drive said automobile. The accident happened on January 1, 1932, shortly before the appointment by the probate court of the testamentary trustees, and thereafter Mrs. Norton filed two actions for damages. In the first Mrs. Lyon alone was sued; but that action was by Mrs. Norton subsequently dismissed. She then filed a second action in which Mrs. Lyon and the testamentary trustees were joined as parties defendant. It was tried before the court without a jury, and judgment given against Mrs. Lyon, from which no appeal was taken. The ground upon which it was held that the testamentary trustees were not liable does not appear from the record before us.

At the trial of the present action plaintiff claimed that in applying for the policy and during all the negotiations which led up to the issuance thereof W. P. Lyon insisted upon a form of contract of insurance that would give public liability coverage not only to him but also to Mrs. Mabel D. Lyon, and that at the time of the making of the contract it was understood and agreed between the parties that the policy to be issued would so provide; that in writing the policy the company, while not naming Mrs. Lyon specifically as an additional assured, employed certain ambiguous words, to wit, those above italicized, which indicate an intention to extend the coverage of the insurance to Mrs. Lyon in conformity with the previous understanding and agreement of the parties; and that when the provision of the policy in which the ambiguous words were inserted is read as a whole and construed most strongly against the company and in the light of the circumstances attending the making of the contract, it is fairly susceptible of the interpretation that the insurance coverage was available to Mrs. Lyon and to the other members of the immediate family of the named assured; and that therefore plaintiff was entitled to introduce parol evidence, not for the purpose of varying, altering or contradicting the wording of the policy, but, as permitted by section 1860 of the Code of Civil Procedure, to show "the circumstances under which it was made, including the situation of the . . . parties to it . . . so that the judge be placed in the position of those whose lan-

guage he is to interpret''. In short, plaintiff claimed that a case of latent or extrinsic ambiguity was presented, and that therefore she was entitled as provided in section 1856 of the Code of Civil Procedure to introduce parol evidence ''to explain'' such extrinsic ambiguity. Such evidence was received subject to defendant's objection that it tended to vary the terms of a written instrument; but subsequent to the submission of the cause the trial court made an order sustaining the defendant's objection thereto and striking out all of said parol evidence; and the basic findings upon which the court subsequently gave judgment for defendant were that the public liability coverage of the policy of insurance was restricted to W. P. Lyon, and that in any event said policy was terminated by his death.

The following was the substance of the parol evidence so introduced and stricken out: Rena Musser testified that in April, 1931, she was the secretary of W. P. Lyon; that she saw Mr. Keller, ''the agent of the defendant'', at Mr. Lyon's office and that in addition to Messrs. Lyon and Keller, she and Miss Lyetta Hayes were present; that Mr. Lyon stated very definitely that he wanted Mabel Lyon insured as well as himself; that he didn't drive the car and didn't want to know how to drive the car and that she (Mabel D. Lyon) ''must be fully covered as well as he was''; that Mr. Keller came back several times and each time it was very definitely stated that he (Mr. Lyon) ''wanted Mabel covered as well as himself'', that he didn't drive the car and that she was not a very careful driver, and that ''he wanted to be sure that she was covered''; that at each of the conversations this same topic was discussed and Mr. Lyon stated that ''he wanted his daughter-in-law to be insured and covered the same as he was'', to which Mr. Keller replied, ''That is all right, I will take care of that.'' On cross-examination this witness testified that on the first visit of Mr. Keller to the office of Mr. Lyon the latter stated to Mr. Keller, ''My daughter-in-law, Mabel Lyon, is doing the driving now, I have no chauffeur. I want her in the same as myself, that is the way I have been covered, I want her covered the same as myself'' and stated that ''he wanted her to have every protection he had'' and stressed on that and repeated it; that Mr. Keller replied, ''I will see this is all taken care of in the policy''; that about the third or fourth visit, Mr. Keller brought in the application,

which was already filled in from information given by Mr. Lyon previously; that Mr. Lyon then signed the application; that some days later Mr. Keller brought in the policy for the first time and handed it to Mr. Lyon. The testimony of Lyetta Hayes, who had a desk closely adjacent to Mr. Lyon, is in accord. This witness testified that she heard the conversations when Mr. Lyon had said to Mr. Keller that he wanted to be sure that Mabel Lyon was covered in every way and that ''if she has an accident there will be no possibility of a misunderstanding about it'', to which Mr. Keller replied that he ''would guarantee that since Mr. Lyon didn't drive the car, of course she would be covered''.

We are of the opinion that, as plaintiff contends, the language employed by the company in writing provision ''D'' of the policy presented a case of latent or extrinsic ambiguity, and that therefore the parol evidence rejected by the court was admissible for the limited purpose for which it was introduced. As stated in California Jurisprudence (vol. 10, p. 939), in discussing the distinction between patent and latent or extrinsic ambiguities, ''Some authorities, however, also recognize a third and 'intermediate class of cases, which partakes of the nature both of patent and latent ambiguities; and that is, where the words are all sensible and have a settled meaning but at the same time consistently admit of two interpretations, according to the subject matter in the contemplation of the parties'. But this latter class may, in many instances, be treated as involving latent ambiguities.'' The authority cited in support of the text is the early case of *Jenny Lind Co.* v. *Bower,* 11 Cal. 194, wherein it was said: ''The language of every instrument should be so construed, if possible, as to effectuate the intentions of the parties; and to ascertain the meaning attached to particular words, when such words are used in various senses, parol evidence is perfectly legitimate. And this evidence is received to explain, and not to contradict or vary the written language. The patent ambiguity, which according to the rules of Lord Bacon cannot be aided by averment, arises from uncertainty upon the face of the instrument in the application of the terms used, and not from uncertainty in the meaning of the terms themselves, when those terms are susceptible of two meanings. (See 2 Parsons, 69, and note.) In the present case the ambiguity lies in the word north; and yet it is not within the rule laid

down by Bacon. It belongs to that 'intermediate class of cases', of which Mr. Justice Story speaks in *Peisch* v. *Dickson*, (1 Mason, 11, Fed. Cas. No. 10,911) 'which partake of the nature both of patent and latent ambiguities; and that is', where the words are all sensible and have a settled meaning, but at the same time consistently admit of two interpretations, according to the subject matter in the contemplation of the parties. 'In such a case, I should think,' said the Justice, 'that parol evidence might be admitted, to show the circumstances under which the contract was made and the subject matter to which the parties referred. For instance, the word "freight" has several meanings, in common parlance; and if by a written contract a party were to assign his freight in a particular ship, it seems to me that parol evidence might be admitted of the circumstances under which the contract was made, to ascertain whether it referred to goods on board of the ship or an interest in the earnings of the ship; or in other words, to show in which sense the parties intended to use the term.' '' The doctrine of that case has since been repeatedly restated and applied by the courts of this state. One of the recent cases is *Ferris* v. *Emmons,* 214 Cal. 501 [6 Pac. (2d) 950], wherein it was held that the use of the word "block" presented an extrinsic ambiguity which justified the admission of parol evidence. The court there said: ''We find no merit in the contention that the parol evidence above referred to was improperly admitted. Contrary to appellant's claim, the evidence neither altered nor varied the terms of the written instrument. It was offered by the respondent, and received by the court below, not for the purpose of changing or adding to the deed, but for the sole purpose of explaining the language therein contained. That parol evidence is admissible for such a purpose cannot be denied. If the word 'block', as used by the common grantor in the subdivision map and several deeds executed pursuant thereto, was intended by him to have a particular and peculiar meaning, it was competent for the court below to permit the introduction of parol evidence to establish that meaning. (Sec. 1861, Code Civ. Proc.; 6 Cal. Jur. 276, 278; *Jenny Lind Co.* v. *Bower & Co.,* 11 Cal. 194; *Higgins* v. *California Pet. & Asphalt Co.,* 120 Cal. 629 [52 Pac. 1080].) Such evidence merely explains the instrument, without varying or adding to it, and serves to give effect to the intention of the parties.''

A more recent case is *Wachs* v. *Wachs*, 11 Cal. (2d) 322 [79 Pac. (2d) 1085], involving the use of the word "transaction". In holding parol evidence there admissible the court said in part: "Perhaps the word 'transaction' is such a word as was in the mind of Mr. Justice Holmes when he said, 'A word is not a crystal, transparent and unchanged, it is the skin of a living thought and may vary greatly in color and content according to the circumstances and the time in which it is used.' (*Towne* v. *Eisner*, 245 U. S. 418, 425 [38 Sup. Ct. 158, 62 L. Ed. 372, L. R. A. 1918D, 254].) . . . It cannot be said from a reading of the contract whether the word 'transaction' was intended to convey the first or second meaning above suggested. It is one of those contracts where the words 'consistently admit of two interpretations, according to the subject matter in contemplation of the parties' and in which 'parol evidence might be admitted to show the circumstances under which the contract was made and the subject matter to which the parties referred'. (*Jenny Lind Co.* v. *Bower & Co.*, 11 Cal. 194, 198; see, also, *McNeny* v. *Touchstone*, 7 Cal. (2d) 429 [60 Pac. (2d) 986] ; Civ. Code, sec. 1647 ; Code Civ. Proc., sec. 1860.) The trial court should therefore have permitted appellant to plead and prove the surrounding circumstances, not for the purpose of varying the terms of the written instrument, but for the purpose of aiding the court in interpreting the contract of the parties as embodied in the written instrument." Another case to the same effect which may be cited is *Auzerais* v. *Naglee*, 74 Cal. 60 [15 Pac. 371].

Here, as stated, the defendant company did not name Mabel D. Lyon as an additional assured, but in writing the policy it employed the term "extension", which, when used in connection with public liability insurance, denotes an intention on the part of the insurer to extend the coverage to persons in addition to the named assured (*Swift* v. *Zurich Gen. A. & L. Ins. Co.*, 112 Cal. App. 709 [297 Pac. 578] ; *Firkins* v. *Zurich Gen. A. & L. Ins. Co.*, 111 Cal. App. 655 [295 Pac. 1051] ; *Votaw* v. *Farmers Auto. Inter-Ins. Exchange*, 15 Cal. (2d) 24 [97 Pac. (2d) 958, 126 A. L. R. 538] ) ; and it will be noted that in the provision in which the term "extension" was used, three different classifications of persons are mentioned, the first of which includes the members of the immediate family of the named assured, and the last being a group headed "any public garage", etc. And it will

be noted also that said provision specifically declares that "the *extension* provided for in this condition shall not be *available* to" the last group headed "any public garage", etc. (Italics ours.) In that situation, and applying the rule that all insurance contracts must be construed most strongly against the insurer, it would appear that as plaintiff contends the provision in which the clause in question is used may be fairly construed as meaning that "the extension provided for" therein was "available" to members of the immediate family of the named assured, and that they were deemed by the parties to be additional assureds thereunder, provided it was first established by satisfactory evidence that at the time the policy was issued it was the intention and agreement of the parties that the policy should so provide. ▇ That being so, under the well-settled judicial doctrine above mentioned, and certain statutory rules (Civ. Code, sec. 1647; Code Civ. Proc., secs. 1859, 1860), the plaintiff was entitled to invoke the aid of parol evidence to explain the sense in which the ambiguous words were employed. ▇ As said in *Balfour* v. *Fresno C. & I. Co.*, 109 Cal. 221 [41 Pac. 876], for the purpose of determining what the parties intended by the language used, it is competent to show not only the circumstances under which the contract was made, but also to prove that the parties intended and understood the language in the sense contended for; and for that purpose the conversations between and declarations of the parties during the negotiations at and before the time of the execution of the contract may be shown.

The defendant company has offered no definite explanation for the use in said clause of the term "extension", nor attempted to analyze the meaning thereof as there used, more than to argue what it contends the entire provision means. But it would seem that the argument so made only tends to strengthen the plaintiff's contention that the use of the term does present a case of extrinsic ambiguity. However, in support of its position that no extrinsic ambiguity arose from the use of said term, it relies principally upon the decision in the case of *Schoefer* v. *Farmers Auto. Inter-Ins. Exchange*, 13 Cal. App. (2d) 289 [56 Pac. (2d) 977], wherein it was held that this same provision did not extend liability coverage to a person "otherwise qualified" who became involved in an accident while driving the assured's automobile with his consent, and

that since no judgment was shown to exist against the assured owner of the car, the insurer could not be held liable under the policy. But, as pointed out by appellant, the situation there cannot be said to be the same as the one here presented, for the reason that in that case no question of extrinsic ambiguity was urged or considered; whereas here it is the main determining factor in the case. Other differentiating features of lesser importance are pointed out by the plaintiff herein, but it would seem that the difference above mentioned is sufficient to show that the decision in that case cannot be deemed to be here controlling. It is true that in the policy here, as in the policy there, only the owner of the automobile was named as the assured, but no particular significance may be attached thereto because even in contracts of liability insurance embodying the standard omnibus clause, the owner of the car alone is named as the assured.

The defendant also cites in support of its position several cases from other jurisdictions, among them being *Baxter* v. *Continental Cas. Co.*, 48 Fed. (2d) 467, appeal dismissed 284 U. S. 578 [52 Sup. Ct. 2, 76 L. Ed. 502]; *State Farm Mut. Auto. Ins. Co.* v. *Burwell*, 232 Ala. 11 [166 So. 598]; *Graham* v. *American Employers Ins. Co.*, (La. App.) 171 So. 471; *Slattery* v. *Merchants Mut. Cas. Co.*, 125 Conn. 507 [7 Atl. (2d) 383]. But an examination of those cases shows that none of the policies considered therein contained the clause on which the plaintiff here chiefly rests her claim as showing an extrinsic ambiguity.

Nor where, as here, an ambiguity is shown to exist in a liability insurance contract, is it essential for a plaintiff to establish which of the two constructions is the more logical. The contract "must be interpreted in the sense in which the promisor believed, at the time of making it, that the promisee understood it" (Civ. Code, sec. 1649), and in case of uncertainty "the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist. The promisor is presumed to be such party" (Civ. Code, sec. 1654). In this respect the court in *Kautz* v. *Zurich Gen. A. & L. Ins. Co.*, 212 Cal. 576 [300 Pac. 34], in restating with approval the principles declared in *Pacific etc. Co.* v. *Williamsburg*, 158 Cal. 367 [111 Pac. 4], goes on to say that while a policy of insurance must be construed according to the language and terms used therein to arrive at their true sense,

and courts will not undertake to relieve parties from the plain stipulations of the policy, still the rule is well established that provisos and exceptions must be strictly construed against the insurer, who was bound to use such language as to make the conditions, specifications, and provisions thereof clear to the ordinary mind, and in case it fails to do so, any ambiguity or reasonable doubt must be resolved against the insurer.

■ The defendant contends that regardless of the question of the ambiguity, the parol evidence introduced by plaintiff was incompetent because it involved the conversations of a soliciting agent of the defendant company, which were not binding upon the company. The rule of exclusion thus sought to be invoked by the defendant, and the cases cited in support of the rule, doubtless apply when the testimony concerning the conversations of the soliciting agent is introduced for the purpose of varying, altering or contradicting, or showing a waiver of the provisions of an existing contract; or when, as in the case of *Toth* v. *Metropolitan Life Ins. Co.*, 123 Cal. App. 185 [11 Pac. (2d) 94], emphasized by defendant, the conversations are relied upon as constituting an oral contract between the soliciting agent's principal and the person with whom the conversations are had. Here, however, as above pointed out, the purpose of the parol evidence introduced by the plaintiff as to the conversations had with the soliciting agent was to show the circumstances under which the contract was made, ''so that the judge be placed in the position of those whose language he is to interpret'' (Code Civ. Proc., sec. 1860); and necessarily those circumstances could be established only by the conversations had with the one who carried on the negotiations leading up to the execution of the contract, which in the present case was the soliciting agent who admittedly was duly authorized by the company to negotiate the contract and secure the application for the issuance thereof. For the purpose stated, the parol evidence introduced by plaintiff was competent. (*Edwards* v. *Masonic Mut. Life Assn.*, 86 W. Va. 339 [103 S. E. 454]; Cooley's Briefs on Insurance, 2d ed., vol. 1, p. 471; *Schultz* v. *Benefit Assn.*, etc., 175 S. C. 182 [178 S. E. 867].)

■ In concluding the discussion on the point of the admissibility of the parol evidence, it may be well to state that we hold merely that it was admissible, and that the plaintiff was entitled to have the same considered by the court in

construing the meaning of the provision of the policy over which the controversy arose. The weight to be given to the testimony is, of course, a matter for the trial court's determination.

We are unable also to agree with the defendant company's further contention that the evidence shows a breach on the part of Mabel D. Lyon of the cooperation clause of the policy which bars plaintiff's recovery. This contention is based on the claim that in violation of the provisions of the policy she refused to allow the defendant company to proceed with the investigation and defense of the action. Briefly stated, the facts are these: The company's attorneys appeared for Mabel D. Lyon in the first tort action without knowing of the death of W. P. Lyon. Following the filing of the second tort action, wherein Mrs. Lyon and the testamentary trustees were sued, considerable discussion took place between counsel for Mrs. Lyon and the trustees, and the defendant company and its attorneys, as to whether the company was liable under the terms of the policy; and eventually as shown by the correspondence which passed between the parties, counsel for Mrs. Lyon informed the company and its attorneys that if they denied all liability under the policy he believed that the company and its attorneys should step out of the case, and he requested the company to state definitely its position in the matter. In response to the letters so written by him he received certain replies, one of which read as follows: "This will advise you that I have received word from the Farmers Automobile Inter-Insurance Exchange that they have completed their investigation in this case and that their investigation discloses that Mabel D. Lyon, also known as Mrs. W. P. Lyon, Jr., was not at the time of the accident insured by their company or in any way protected under the policy issued to W. P. Lyon, Sr. While the company is willing as a matter of courtesy and advertising, without the assumption of any liability on their part, to defend this suit, if you still insist or desire that the defense of the case be turned over to you in accordance with your letter of February 1st, we will be pleased to make such arrangements at your convenience." Several months later the attorneys for the defendant company again wrote counsel for Mrs. Lyon as follows: "The company is still of the opinion that neither Mabel D. Lyon or any of the defendants named in the new

suit were covered by any insurance in said company at the time of the accident, and that the policy thereafter issued to W. D. Lyon Sr. does not cover this action or any of the parties named therein. I am authorized, however, to again offer you as a matter of courtesy, without the assumption of any liability on their part, and under a non-waiver agreement which I would wish to have signed before we took any part in the suit, defense by the company. Needless to say, as the company claims that they have no insurance on this accident, in reply to your inquiry about the collision claim, I must state that the company denies liability.'' In view of the position thus taken by the company as stated in its letters, counsel for Mrs. Lyon declined the offer of the company to defend the action brought against her and the trustees. Under the circumstances we are unable to sustain the trial court's finding in defendant's favor relating to the cooperation clause.

Several other points are presented by the appeal relating to the question of the termination of the policy by reason of the death of W. P. Lyon and the effect of his death upon the rights of the respective parties under the policy; but in view of the conclusion we have reached upon the question of the admissibility of the parol evidence it is unnecessary to inquire into and determine those additional points.

The judgment is reversed.

Peters, P. J., and Ward, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on September 28, 1940, and an application by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on October 28, 1940. Edmonds, J., voted for a hearing. Traynor, J., did not participate.