300 A.2d 480.

FAITH C. MARTIN *et al. vs.* H. WINFIELD TUCKER *et ux.*

FEBRUARY 23, 1973.

PRESENT: Roberts, C.J., Paolino. Powers. Joslin and Kelleher, JJ.

KELLEHER, J. This is a boundary dispute which arises from a description found in a 1906 deed which says that the line in question runs "due south" from the "hollow in the * * * road to a point in the center line of the pond." The plaintiffs, Faith C. Martin and Emma J. Richmond, contend that south means "magnetic" south. The defendants maintain that "due" is synonymous with "true" and "due" south means "true" south. After a jury-waived trial, a justice of the Superior Court found for the plaintiffs. The defendants have appealed.

The litigants own adjoining parcels of land situated in the Matunuck Hills section of South Kingstown on the north shore of White Pond. Both sides presented an expert witness. Each expert was a civil engineer.

The plaintiffs' expert had retired at trial time but in his own words, he had been surveying and drawing up plats

of land in the South Kingstown-South County area on and off "for probably fifty years." He told the trial justice that, in his opinion, the 1906 deed had been prepared by a layman.[1] He thought that the due south referred to therein was the magnetic meridian. Around the turn of the century, he said, most deeds were describing the direction in which the surveyor's needle pointed. He also said that recourse to true bearings with the additional work of determining the declination[2] and computation of the true bearing was only undertaken for the larger surveying projects which went on in South County. In fact, plaintiffs' expert stated that of all the jobs he had performed during his career, only three or four employed the use of the true meridian. He agreed that, in a given instance, a reference in a deed describing due south could refer to true south but such was not the case with the line separating the Martin-Richmond land from the Tucker parcel.

---

[1] There are no distances set forth in any of the courses contained in the description. The only bound referred to is a "heap of stones * * * near the shore of White [P]ond." For those who might wonder how the "hollow" in the road can now be identified, it is agreed that an iron pipe which appears in a 1966 survey marks the spot.

[2] Because of the earth's magnetic force, the needle in a magnetic compass points to the magnetic rather than the true north. The angle between these two locations is sometimes called declination. Declination varies from location to location and from one time to another. The Scout Handbook (8th ed. 1972) at 209 shows that the declination for Rhode Island is 14° west, therefore, the needle on a scout's compass being used in Rhode Island is actually pointing to 14° north. A brother scout tramping through the Alabama countryside should keep in mind that because the declination in that area is 2° east, his compass needle is actually pointing to 358° north. Our reference to the handbook is prompted by the testimony of the defendants' expert who, in seeking to minimize the difficulty in converting a magnetic reading to true reading, remarked that this subject is taught to the Boy Scouts. Counsel for the plaintiffs reminded the witness that the Boy Scouts were not operating in South County in 1906. Counsel was correct. The Boy Scouts of America was incorporated on February 8, 1910. Handbook at 372-73.

The defendants' expert, while lacking the experience of plaintiffs' engineer, testified in just as informative a manner as his senior colleague. He produced a text which said "due" meant "true". It was written in the 1950's by a California surveyor. The witness conceded that what might be said about our western sister state was not necessarily relevant to surveying practices prevalent in New England around 1900. He admitted that in and around that time maps were prepared with the use of magnetic bearings. This engineer said that the 1906 deed did not appear to be a surveyor's deed. This witness emphasized that "due" does not always mean "true" but that its exact meaning depends upon various circumstances. His conclusion that the 1906 "due" meant "true" was based in part on a 1907 survey to which we shall subsequently refer. It is manifest that terms such as "south" or "due south," when they appear in a descriptive portion of a deed, cannot be given a fixed inflexible judicial construction but rather their meaning must depend upon and be controlled by extraneous facts. *Jenny Lind Co.* v. *Bower & Co.*, 11 Cal. 194 (1858); *McKinney* v. *McKinney*, 8 Ohio St. 423 (1858). We think that the comments made by the New Hampshire Supreme Court in *Wells* v. *Jackson Iron Mfg. Co.*, 47 N. H. 235, 260 (1866) are pertinent. In *Wells*, the line ran "due north." "Due," observed the court, added nothing to resolving the issue because it means "exactly" whereas the question was what north was the grantor talking about. The court went on to observe that in New Hampshire "* * * courses in a deed are to be run according to the magnetic meridian, unless something appears to show that a different mode is intended in the instrument." Further, in III *American Law of Property* §12.105 (1952) is found the following:

> "However, in the older states where it appears to have been the custom to make surveys according to the magnetic meridian rather than the true meridian, the courses are held to relate to the former as it ex-

isted on the date of the deed rather than to the true meridian." *Id.* at 411.

On the other hand, it has been held that unless the terms of a deed or admissible extrinsic evidence show a different method was intended, a "due north" call should be surveyed on an "astronomical" (true) basis. *Richfield Oil Corp.* v. *Crawford,* 39 Cal.2d 729, 249 P.2d 600 (1952). This principle follows a long line of cases which refer to a California statute found in 34 West's Annotated Cal. Code §23071 which states that where a course is described as north, south, east or west, a true course is intended.

We will presume that neither a magnetic nor a true course was intended but leave it in each case to the trier of fact to determine from the evidence presented to him the course to be followed. This is especially so since Clark, *Law of Surveying & Boundaries* §44 (3d ed. 1959) reports the increased use by surveyors of a solar compass which gives a true bearing.

The phrase "due south" is ambiguous. The evidence adduced from the experts warranted the trial justice's conclusion that in 1906 it was the needle of a magnetic compass which controlled and set out the boundary line. His finding that due south was equivalent to magnetic south finds support in the record and will not be disturbed. We make this declaration cognizant of the defendants' stress on the 1907 plat prepared by one of their predecessors in title which shows the boundary line set out on a true bearing. However, there was no evidence that this plat was ever recorded. It was obviously drawn up subsequent to the 1906 deed, and shows the boundary line meeting a stone bound which is situated on the shore. The bound is distinguished by a drill hole. The 1906 deed makes no mention of such a marker. It may be, as the plaintiffs suggest, that this document amounted to a surreptitious unrecorded self-

196

serving effort by the 1906 grantee to expand his lake frontage at the expense of his neighbors.

The defendants' appeal is denied and dismissed.

Mr. Justice Powers participated in the decision but retired before its publication. Mr. Justice Doris did not participate.

*Robert B. Gates,* for plaintiffs.

*Smith & Smith, Z. Hershel Smith, Edward M. Botelle,* for defendants.