ATLANTA ACCIDENT ASSOCIATION *v.* ALEXANDER.

1. Where one is insured against "personal bodily injuries, effected . . through external, violent, and accidental means," and there is evidence tending to show that an injury received by the insured resulted from such means, the jury should determine, as a question of fact, whether the injury did result from accidental means. In the present case this issue was, under the charge of the court, fairly submitted to the jury, and there was sufficient evidence to sustain the finding.

2. The insurer is not relieved from liability upon such a policy, by a clause therein providing in effect that the insurance should not cover "injuries

or death resulting from or caused directly or indirectly, wholly or in part, by disease or bodily infirmity, hernia, . . rupture," etc., although the injury received may have produced hernia which caused the death of the insured.

Argued May 18, — Decided June 8, 1898.

Action on insurance policy. Before Judge Reid. City court of Atlanta. November term, 1897.

The policy sued on was payable to the plaintiff, and insured her husband against "personal bodily injuries effected . . through external, violent, and accidental means, subject to the charter and by-laws of this association." It provided that "this insurance shall not cover . . injuries of which there is no visible mark upon the body, nor accidental injuries or death resulting from or caused directly or indirectly, wholly or in part, by disease or bodily infirmity, hernia, . . rupture," etc. Plaintiff alleged, that the insured, by the unexpected and un-foreseen result of using a heavy hammer, and by external, violent, and accidental means, was injured by the laceration, tearing, and wounding of his person, producing an expulsion of the intestines through said wounds, the same being the direct and immediate result of said external, violent and accidental means; and that from said result alone he died in less than two days. Defendant moved for a nonsuit on the grounds, that the contract provided that the plaintiff could not recover for an injury resulting from hernia; and that it was not an accidental injury within the meaning of the policy. The court overruled this motion. No evidence was introduced by the defendant. There was a verdict for the plaintiff, and a motion for new trial was overruled. The motion, in addition to the general grounds, alleged error in a part of the court's charge, in substance as follows: That if hernia existed with reference to the alleged accident, and death or injury resulted from hernia already existing, or was produced by other cause than the alleged accident and injury resulting from the hernia, the company would not be liable; but if the alleged accident caused the hernia, and it resulted in death, if the proximate cause of hernia was due to the accident, then the defendant would be liable.

*Burton Smith* and *Frank Gordon*, for plaintiff in error.
*Vasser Woolley*, contra.

SIMMONS, C. J. 1. In the case of U. S. Mutual Acc. Ass'n *v.* Barry, 131 U. S. 100, it appeared that three persons jumped to the ground from a platform four or five feet high. Two of them landed safely, while Barry was injured by the jump. This seemed to have caused some disarrangement of the stomach; and after lingering nine days, Barry died. There was no evidence of anything unusual in the jump. The question was submitted by the trial judge to the jury, who found that Barry's death was caused by accident and was the result of external, violent, and accidental means. The case was carried to the Supreme Court of the United States, and the judgment of the lower court affirmed. Blatchford, J., in delivering the opinion of the court, said: "It is further urged that there was no evidence to support the verdict, because no accident was shown. We do not concur in this view. The two companions of the deceased jumped from the same platform, at the same time and place, and alighted safely. It must be presumed not only that the deceased intended to alight safely, but thought that he would. The jury were, on all the evidence, at liberty to say that it was an accident that he did not. The court properly instructed them that the jumping off the platform was the means by which the injury, if any was sustained, was caused; that the question was, whether there was anything accidental, unforeseen, involuntary, unexpected, in the act of jumping, from the time the deceased left the platform until he alighted on the ground; that the term 'accidental' was used in the policy in its ordinary, popular sense, as meaning 'happening by chance; unexpectedly taking place; not according to the usual course of things; or not as expected'; that, if a result is such as follows from ordinary means, voluntarily employed, in a not unusual or unexpected way, it can not be called a result effected by accidental means; but that if, in the act which precedes the injury, something unforeseen, unexpected, unusual occurs which produces the injury, then the injury has resulted through accidental means." In the case of N. A. Life & Acc. Ins. Co. *v.* Burroughs, 69 Pa. St. 43, the insured, while assist-

ing in hauling and handling hay, sustained an injury to the abdominal muscles, producing peritoneal inflammation which resulted in death. It was held: "An accidental strain, resulting in death, is an accidental injury within the meaning of the policy. The words in the policy include death from any unexpected event happening by chance, and not occurring according to the usual course of things." In the case of McCarthy *v.* Traveler's Ins. Co., 8 Bis. (C. C.), the insured, while exercising with Indian clubs, ruptured a blood-vessel, by reason of which death occurred. It was held: "That if the deceased used the clubs for exercise in the ordinary way, and without the interference of any unusual circumstances, the injury was not accidental; but if there occurred any unforeseen accident or involuntary movement of the body which, in connection with the use of the clubs, brought about the injury, then such means were accidental and within the terms of the policy."

Following these decisions, we think the evidence in the present case was sufficient to authorize the jury to infer that the plaintiff's husband was injured in the manner described in the policy. It appears from the record, that he was a hale, hearty man; his occupation was that of a blacksmith; it was his duty upon this occasion to use a heavy sledge-hammer; he had used it many times before in the course of his business; on this particular occasion, in striking a slanting blow he suddenly felt a severe pain in the lower part of his abdomen; the injury proved to be a rupture producing hernia, which injury resulted, in a few days, in death. Taking all the facts together, the fact of his previous good health, the fact that he had many times before used the hammer, the sudden pain after the blow of the hammer, and other facts which appeared, the jury could properly infer that the act which preceded the injury was something unforeseen, unexpected, and unusual, and that the injury resulted directly and immediately from such act, and was therefore produced by external, violent, and accidental means.

2. It is claimed by counsel for plaintiff in error, that, even if the injury in this case was caused by accidental means, the death of the plaintiff's husband was caused by hernia, and that the association is relieved of liability by a clause of the policy

which provides that the insurance shall not cover "injuries or death resulting from or caused directly or indirectly, wholly or in part, by disease or bodily infirmity, hernia, . . rupture," etc. We do not agree with him in his construction of this clause of the policy. We think that where hernia is produced by a sudden and accidental strain and the insured shortly afterward dies therefrom, the association is not exempt under this clause. Such a construction would make the policy very misleading to the insured. It would be, as was said by Willes, J., in the case of Fitton v. Acc. Death Ins. Co., 17 C. B. n. s. 122, 112 E. C. L. 122, "a most illusory policy." Williams, J., in the same case, said: "Looking at the language of the policy, and taking the first condition altogether, upon the best interpretation I can put upon it, I am of opinion that it means to exempt the company from liability only where the hernia arises within the system. . . I think the company are not relieved from responsibility where the hernia is caused by external violence." And Willes, J., then said: "I am of the same opinion. . . No doubt this is a very valuable company: it has saved many families from severe distress. But its value would be very much diminished if it were held that the company was absolved from liability on its policies if it should appear that the immediate cause of the death of the insured was strangulated hernia arising from external violence. Hernia being very likely to arise from external violence, many persons would be deprived of the benefit of their policies if the construction contended for by the company were allowed to prevail." In the case of Travelers' Ins. Co. v. Murray, 16 Colo. 297, it was held that "An accident policy which insures against death 'from bodily injuries effected through external, violent, and accidental means,' but excepting death from hernia, or medical or surgical treatment, does not relieve the insurer from liability where the proximate cause of death was hernia caused by 'external, violent, and accidental means.'" To the same effect see McCarthy v. Traveler's Ins. Co., supra; 1 Am. & Eng. Enc. L. (2d. ed.) 318, and notes.

*Judgment affirmed. All the Justices concurring, except Cobb, J., disqualified.*