Pollock *v.* Clairton School District et al.,
Appellants.

Argued October 20, 1930.

Before Trexler, P.
J., Keller, Linn, Gawthrop, Cunningham and Baldrige, JJ.

*L. Barton Ferguson,* for appellants.—Where notice is not given to the employer as required by the Act of April 13, 1927, P. L. 186, the Workmen's Compensation Board is without jurisdiction: Giordonne v. Alaimo Bros., 13 D. & C. 14; Smith v. Pittsburgh Coal Co., 27 Dist. Rep. 43.

*Charles A. Lewis,* and with him *Charles P. Lewis,* for appellee.

Opinion by Cunningham, J., December 12, 1930:

The claimant in this workmen's compensation case is the widow of W. J. Pollock, employed as a janitor in one of the buildings of Clairton School District. She alleged that while her husband was engaged in shoveling coal into a furnace about 10:30 o'clock on the night of April 24, 1929, he suffered a "strangulated inter-abdominal hernia," which caused his death about four o'clock on the morning of April 27th. The school district and Hartford Accident and Indemnity Company, its insurance carrier, defended upon the general ground that the requirements of the Act of April 13,

1927, P. L. 186, 189, further amending Section 306 of the Workmen's Compensation Law of 1915 by prescribing the conditions under which hernia shall be considered a compensable injury, had not been met.

The referee awarded compensation and the board affirmed his order; defendant's insurance carrier appealed to the court of common pleas of Allegheny County; that court in an opinion by DREW, J., affirmed the award of the board and entered judgment thereon in favor of the claimant. We are now asked by the insurance carrier to reverse the judgment upon the ground that the notice specified in the hernia amendment was not given to the employer within the time therein limited—"forty-eight hours after the occurrence of the accident."

These uncontroverted facts appeared from the evidence: Claimant's husband was in his usual health when he went to work on the evening of April 24th; while throwing coal into a furnace—each shovelful weighing from eight to ten pounds—he was stricken with a severe abdominal pain and was unable to continue his labor; upon removal to his home the pain continued throughout the night; the family physician was called on the morning of April 25th and administered treatment until the following day, when, being satisfied that the patient was suffering from some kind of an intestinal obstruction, he advised removal to a hospital. Upon examination there an operation was found to be imperative. It was performed on the evening of the 26th and was followed by the death of the employe early the next morning, approximately fifty-three hours after the alleged accident. The operating surgeon testified that it was apparent upon the arrival of the patient that he had an "intestinal obstruction, the nature and cause" of which could be determined only by an operation. In the course of the operation it was found that the bowel had passed

through the meso-appendix resulting in a "strangulated intestinal hernia." The surgeon's opinion (concurred in by the attending physician), as to the cause of death, was thus expressed: "A. I think that when he made the effort to throw that coal into the vault of the furnace he increased his interabdominal pressure and caused the ileum to protrude and that it failed to come back and that his hernia began at that time. Q. Was the hernia that you believe was caused at that time the direct cause of his death? A. Yes, sir."

There was no external indication of the existence of the hernia. The attending physician, referring to his examination when first called, testified: "Q. Did you examine the deceased's body at that time? A. Yes. Q. Was there any indication of trauma to any part of his anatomy? A. Not a bit. Q. Was there any evidence of a hernia at that time? A. You mean an external hernia? Q. Yes. A. No, there wasn't. Not on the surface. ...... Q. Did you inform the family of your opinion as to a hernia? ...... A. You mean at the time I thought he had to go to the hospital? Q. Yes. A. I told them the bowel might be pushed through the mesentery which would form a hernia which would not show on the surface or it might be a telescoping of the bowels or twisting but I wasn't sure what it was."

On the feature of notice to the employer, there was evidence that, when Pollock was unable to return to work on the morning of the 25th, word was sent by the claimant to the head janitor that he "was sick and wouldn't be in," and that the fact of his illness was communicated by the head janitor to the secretary of the school board sometime during the 26th. The amendment relied upon by appellant reads: "Hernia shall be considered as a physical weakness or ailment, which ordinarily develops gradually, and shall not be

compensable, unless conclusive proof is offered that the hernia was immediately precipitated by such sudden effort or severe strain that: first, the descent of the hernia immediately followed the cause; second, there was actual pain in the hernial region; third, the above manifestations were of such severity that the same were immediately noticed by the claimant and communicated to the employer, or a representative of the employer, within forty-eight hours after the occurrence of the accident.''

There was evidence from which the compensation authorities could find that this hernia did not result from the gradual and ordinary development of a physical weakness or defect but was ''immediately precipitated'' by a ''sudden effort or severe strain;'' that it occurred in immediate connection with its cause; and that there was ''actual pain in the hernial region,'' which was ''immediately noticed by'' the employe. There was, however, no evidence that the fact that Pollock had suffered a hernia was communicated to the employer, or its representative, ''within forty-eight hours after the occurrence of the accident.'' As appears from the testimony of the surgeon, a hernia of the type here found is most unusual. No one had definite knowledge, prior to the opening of the abdomen, that it had occurred. Should the compensation authorities, in applying the law to the facts of this case, have concluded, as a matter of law, that the failure to give the required notice defeated the claim? That is the only question involved on this appeal.

We had occasion to consider this amendment at length in the case of Berner v. Philadelphia and Reading Coal and Iron Company, 100 Pa. Superior Ct. 324, and there held that the term ''hernia'' was used by the legislature in a popular, rather than a surgical, sense and as implying a noticeable protrusion from some part of the abdominal cavity and that the ''mani-

festations'' required to be communicated to the employer within the time limited were the descent (evidenced to the claimant by the protrusion) and the ''actual pain in the hernial region.'' That was a case of ordinary inguinal hernia to which the amendment clearly applied. In a surgical sense, hernia includes not only the protrusion of parts of the viscera from the abdominal cavity but also of any soft interior organ from its normal cavity, as a hernia of the brain, lung or eye, and of course includes an intestinal hernia of the type disclosed by the operation described in this case. But when the use by the legislature of the word ''hernia'' is considered in the light of all the provisions of the amendment, we think it is clear that it did not intend to bring within the scope of the operation of the amendment any hernias other than the ordinary hernias, or ''ruptures,'' which gives evidence of their occurrence by a protrusion from some part of the abdominal cavity. We are of opinion that the amendment was not intended by the legislature to apply to a hernia of the kind shown by the evidence in this case to have been accidentally suffered by claimant's husband in the course of his employment and to have been the direct cause of his death. This conclusion is decisive of the issue here raised and we, therefore, express no opinion upon the other interesting question discussed in the briefs—whether, even in cases of ordinary hernia, all the provisions of the amendment, and particularly the requirement relative to notice to the employer, were intended to apply when, as here, the employe dies shortly after, and as a result of, the injury and compensation is claimed by his dependents.

The assignments of error are severally overruled and the judgment affirmed.