Walter Joseph Stewart, Appellee, v. Guarantee Trust Life Insurance Company, Appellant.

Gen. No. 42,868.

 Heard in the first division of this court for the first district at the October term, 1943. Opinion filed February 28, 1944.

FITHIAN, SPENGLER & FINNEGAN, of Chicago, for appellant.

J. W. HORWITZ and AARON R. EPPSTEIN, both of Chicago, for appellee.

MR. JUSTICE MATCHETT delivered the opinion of the court.

In a suit brought June 12, 1942, on an insurance policy issued May 5, 1941, and based on an injury sustained by the insured on June 3, 1941, upon trial by jury there was a verdict for plaintiff in the sum of $1,233.75. Defendant's motion for a new trial was overruled and judgment entered on the verdict, from which the defendant appeals.

The policy was designated as a "Special Income Disability Policy." The amended complaint under which the cause was tried alleged plaintiff paid the premiums and complied with all the terms and conditions of the policy; that on June 3, 1941, plaintiff sustained injuries as a result of an accident by which he became totally disabled, for which he was entitled to indemnity in the sum of $940 which the defendant company had refused to pay; also that under other terms of the policy and by reason of the injuries sustained by him he was entitled to benefits designated by the policy as "Financial Aid" to the amount of $200 more; that he further was entitled to interest at the rate of 5 per cent on the above two items, which became due to him when payment was demanded and refused.

By amendment plaintiff also claimed the right to recover the further sum of $250 as a reasonable attor-

ney's fee on the ground that the defense interposed by defendant was vexatious. Defendant moved to strike the complaint. The motion was denied. Leave was given plaintiff to amend, as was afterwards done.

It is urged for reversal that a motion of defendant for an instruction in its favor at the close of all the evidence should have been given; that the verdict is contrary to the law and the evidence; that the court erred in receiving evidence of plaintiff in the presence of the jury as to the reasonable value of plaintiff's attorney's fees; that the verdict is excessive, and that a new trial should have been granted.

There is practically no dispute as to the facts. Plaintiff was employed by Wendnagel & Company and had been working for that company about three weeks prior to the accident. He was a structural iron worker. His duties included the lifting of heavy objects. At about 10:30 a. m. on the morning of the accident he with others was at work fitting some heavy I-beams up under the ceiling of an old building which was in process of repair. The beam was carried from the adjoining yard into the room on a "dolly." Plaintiff testified: " 'On this day we had the beam up to about our chests. I am 5 feet 9 inches tall. I got my shoulder under the beam and raised it up as far as it would go under the ceiling and onto another I-beam which was already up there.' Mr. Eppstein: 'Did anything happen then?' The Witness: 'Well, I felt something crack in my back, just like you would break a stick, and it was followed by severe pain. The beam was up on my shoulder at the time I felt the pain. After that we raised it up to where it belonged and put more blocks under it. The end I was carrying when I felt this pain was the end we were lifting up. I reported this to my foreman, Mr. Johnson, and he gave me some lighter work to do. I did this lighter work the balance of the day. I had severe pain in my back for the balance of the day. After I left the plant I

went home. I was able to move around and walk but my neck and back were very painful.' ''

Plaintiff reported to the foreman next morning that he was unable to work. He had pain in his back and a bump on it about the size of a walnut or onion. Mr. Johnson sent him to Dr. Valentine, who did not testify in this case. Plaintiff was given three heat treatments of about fifteen minutes each by Dr. Valentine. The accident occurred in Chicago. He went to his home in Crown Point, Indiana, coming to Chicago each day by bus for the treatments. Plaintiff moved to Crown Point on June 7th and before that time had been living in this city. After moving to Crown Point the Zurich Insurance Company sent plaintiff to Dr. Bills in Gary. Dr. Bills did not testify. Dr. Bills sent plaintiff to the U. S. Steel Company Hospital at Gary for treatments, then sent him to Dr. Ellis in Chicago. Medical testimony on both sides was submitted to the jury under instructions which stated with clearness the issues in the case.

The policy excluded from the losses for which the company would indemnify ''sprains, strains, lame back, hernia, rheumatism, arthritis, neuritis, or heart, liver or kidney trouble,'' and a long line of other maladies, conditions, symptoms, etc., to which most humans are unfortunately susceptible. Just why this instrument was designated an ''insurance'' policy we do not understand. We have searched the record without finding any offer to return the premium. The learned doctors who testified explained very clearly to the jury the difference between ''pre-existing arthritis'' due to infection and ''post-operative arthritis'' said to be due to and following surgical operations upon the human body. The policy does not distinguish between the particular kinds of arthritis. The jury evidently was able to do so. Plaintiff had the post-operative kind which had nothing to do with bringing on the injury but was caused by it. We refer defend-

ant to the law regarding strict and liberal constructions of ambiguous written documents. Manifestly the policy was not intended to exclude post-operative arthritis. It is elementary that the language of an insurance contract when ambiguous is construed strictly against the company and liberally in favor of the insured. *Monahan v. Fidelity Mut. Life Ins. Co.*, 242 Ill. 488, 493; *Julius v. Metropolitan Life Ins. Co*, 299 Ill. 343, 348. There are many cases on this point cited in plaintiff's brief, to which defendant has filed no reply. There is no complaint that the jury was not accurately instructed as to the law applicable.

Only one point made by defendant has given us concern. This is Point IX, in which he complains that over his objection plaintiff's attorney was permitted to testify to the jury as to the reasonableness of his attorney's fees, and, as a matter of fact, plaintiff concedes that the amount to which he testified (namely $250) is included in the verdict of the jury and in the judgment. The point involves a construction of sec. 155, par. 767 of ch. 73, Ill. Rev. Stat. 1943 [Jones Ill. Stats. Ann. 66.830]. The section in substance provides that in any action by or against a company, wherein there is an issue, the liability of a company on a policy or policies of insurance, or the amount of the loss payable thereunder, if the company has brought suit to cancel the policy (which has not been done here) or refused upon demand prior to the commencement of the action to pay the amount of the loss (which is in substance true here) "and it appears to the court that such suit or refusal is vexatious and without reasonable cause, the court may allow to the party, who by the finding of the court or jury is entitled to prevail against the company, reasonable attorney's fees as a part of the taxable costs in the action and in addition to all other costs, but such allowance shall not exceed any one of the following amounts . . . ," stating the amounts which here the jury was instructed was

25 per cent of the amount recovered. So far as the briefs inform us this section of the Insurance Code has never been construed by any court of review of this State. Some authorities from other States are cited, but the statutes are not similar and we do not find the cases persuasive. We are disposed to hold that under this statute the matter of the determination of the reasonable attorney's fees is for the court and not for the jury. It is to be noticed that the amount of attorney's fees to be allowed is "as a part of the taxable costs in the action and in addition to all other costs." Under our practice the matter of costs is for the court rather than the jury. This seems to be the legislative intention. See "Some Aspects of the Illinois Insurance Code" by Professor Havighurst in Illinois Law Review, vol. 32, pp. 404, 405. He also points out that statutes of a similar kind have been held constitutional by the Supreme Court of the United States in *Life & Casualty Ins. Co. v. McCray,* 291 U. S. 566, and also cites *Aetna Life Ins. Co. v. Dunken,* 266 U. S. 389, and *Fraternal Mystic Circle v. Snyder,* 227 U. S. 497. We hold the court erred in admitting this evidence and in submitting it to the jury over the objection of the defendant. It is admitted that the sum of $250 to which Mr. Eppstein testified as his reasonable attorney's fees is included in the verdict and in the judgment. There was no contradiction in the evidence on this point, and this error, it would seem, can be cured by a remittitur of that amount. We are not impressed with any other defense presented in this case. If, therefore, within 10 days, plaintiff will remit from the amount of the judgment of $1,233.75, the sum of $250, it will be affirmed for the sum of $983.75, otherwise reversed and the cause remanded for another trial.

*Affirmed upon remittitur; otherwise reversed and remanded.*

O'CONNOR, P. J., and NIEMEYER, J., concur.