[Civ. No. 17130. Second Dist., Div. Three. Jan. 27, 1950.]

HARRY G. PENDELL, Respondent, v. WESTLAND LIFE INSURANCE COMPANY (a Corporation), Appellant.

Webb, Webb & Crites, Hester Webb and Reed Crites for Appellant.

Newell & Chester for Respondent.

VALLÉE, J.—Appellant, defendant below, appeals from a judgment for plaintiff in an action for a declaration of his rights under a contract of health and accident insurance.

June 21, 1943, appellant issued a policy of insurance called ''Employees Income Policy (Non-Occupational)'' by which it agreed to indemnify respondent for specified losses. In part it read that if respondent, while the policy was in force, should sustain loss resulting directly and independently from all other causes from accidental bodily injury which did not arise out of or was not sustained in the course of employment for compensation, profit or gain, and if such injury within twenty days of the date of the accident totally and continuously disabled respondent, appellant would pay respondent a monthly indemnity of $100 a month, as long as he was so disabled, not exceeding five years. It also indemnified respondent against loss occurring while the policy was in force resulting from bodily disease, the cause of which originated more than thirty days after the date of the policy ''hereinafter referred to as 'such sickness.' '' The amount of the indemnity was set forth in part 1.

Part 16 (C) in part read: ''Under the terms of this policy, lumbago, sprained or lame back, or hernia shall be classified as 'such sickness.' The only indemnity payable for hernia shall be one month's indemnity under Part 10 (A) or (B), [$100] and then only in the event of a necessary herniotomy.''

In a ''First Day Coverage Rider,'' a part of the policy, appellant agreed that the various indemnities referred to in the policy would be paid as of the first day of injury.

In a ''Surgical Operation Fees Rider,'' a part of the policy, appellant agreed to pay the actual expense incurred for ''Hernia—Cutting operation for radical cure of Single hernia . . . 50.00 More than one hernia . . . 75.00.''

February 5, 1946, while the policy was in force, respondent accidentally sustained an ''esophageal hiatus diaphragmatic hernia'' (the peritoneal sac covering the stomach slid up into the membranous partition separating the thoracic cavities), nonoccupational in nature. He has been totally disabled since that date. He submitted to an operation. Appellant paid respondent one month's indemnity of $100 and a $50 surgical fee.

The court found that the parties did not intend to include an ''esophageal hiatus diaphragmatic hernia'' within the meaning of the word ''hernia'' as used in part 16 (C). Judgment

was for respondent for $100 a month from one month after the accident to the time of trial.

Appellant's specifications of error are: 1. The word "hernia" as used in the policy includes an "esophageal hiatus diaphragmatic hernia" as a matter of law. 2. The court erred in admitting in evidence a specimen of a special "Surgical Operation Fees Rider" issued by appellant in April, 1946.

If the word "hernia," as used in the policy, includes an "esophageal hiatus diaphragmatic hernia," respondent was fully paid. If it does not he is entitled to $100 a month for five years.

The first specification of error is, in effect, that the word "hernia" as used in the policy is unambiguous; and that parol evidence, admitted without objection, to aid the court in construing the contract, may not be considered. The clause in the policy providing that the indemnity payable for "hernia" shall be for one month is an exception to the general indemnity provided by the policy.

■ The terms of a contract of insurance constitute the measure of the insurer's liability and should be construed according to the language used therein. (*Pacific etc. Co.* v. *Williamsburg etc. Co.,* 158 Cal. 367, 369 [111 P. 4]; *Coit* v. *Jefferson Standard Life Ins. Co.,* 28 Cal.2d 1 [168 P.2d 163, 168 A.L.R. 673].) Language which is clear and unambiguous is to be construed according to its plain meaning. (*Guidici* v. *Pacific Automobile Ins. Co.,* 79 Cal.App.2d 128, 134 [179 P.2d 337].)

A contract of insurance, like any other contract, is to be construed so as to give effect to the intention of the parties at the time of contracting so far as it is ascertainable. (Civ. Code, § 1636.) ■ Where the language is susceptible of two constructions, it should be construed most strongly in favor of the insured. (*Mah See* v. *North American Acc. Ins. Co.,* 190 Cal. 421, 424 [213 P. 42, 26 A.L.R. 123]; *Island* v. *Fireman's Fund Indemnity Co.,* 30 Cal.2d 541, 548 [184 P.2d 153, 173 A.L.R. 896].) A contract of insurance must be given such construction, if fairly warranted, as will best carry out the object for which the contract was entered into, namely, that of securing indemnity to the insured for the losses to which the insurance relates. (*Fageol T. & C. Co.* v. *Pacific Indemnity Co.,* 18 Cal.2d 748, 751 [117 P.2d 669].) Indemnification of the insured should be effected rather than defeated.

"To that end the law makes every rational intendment in order to give full protection to the interests of the insured." (*Glickman* v. *New York Life Ins. Co.*, 16 Cal.2d 626, 635 [107 P.2d 252, 131 A.L.R. 1292].)

■ Exceptions in a contract of insurance which purport to limit the risk assumed by the insurer in the general provisions thereof are to be construed most strongly against the insurer and in favor of the insured and if susceptible of two meanings, the one most favorable to the insured is to be adopted. (*Mah See* v. *North American Acc. Ins. Co.*, 190 Cal. 421, 424 [213 P. 42, 26 A.L.R. 123]; *Bayley* v. *Employers' etc. Corp.*, 125 Cal. 345, 352 [58 P. 7].) The insurer is bound to use such language as to make the exceptions and provisions of the contract clear to the ordinary mind; and in case it fails to do so, any uncertainty or reasonable doubt is to be resolved against it. (*Pacific etc. Co.* v. *Williamsburg etc. Co.*, 158 Cal. 367, 370 [111 P. 4].)

Civil Code, section 1644, says that "The words of a contract are to be understood in their ordinary and popular sense, rather than according to their strict legal meaning; unless used by the parties in a technical sense, or unless a special meaning is given to them by usage, in which case the latter must be followed."

If the language may be understood in more than one sense, it is to be construed against the insurer and in favor of the insured. (*Bayley* v. *Employers' etc. Corp.*, 125 Cal. 345, 352 [58 P. 7].) If there is doubt whether words of a contract of insurance were used in an enlarged or restrictive sense, other things being equal, the construction will be adopted which is most beneficial to the insured. (*Berliner* v. *Travelers' Ins. Co.*, 121 Cal. 458, 461 [53 P. 918, 66 Am.St.Rep. 49, 41 L.R.A. 467].) ■ Where language, somewhat technical in character—or if not technical at least colored by the meaning attributed to it by medical men with which laymen are more or less unacquainted—is to be construed, it is far safer to leave the meaning thereof, with all the circumstances in mind, to the trier of fact, than for a reviewing court to lay down a hard and fast rule as to what the language means. (*Amok G. M. Co.* v. *Canton Ins. Office*, 36 Cal.App. 265, 270 [171 P. 1098].) Unless it is obvious that a word was used in its technical sense it will be given the meaning that common speech imports. (*Greenberg* v. *Continental Cas. Co.*, 24 Cal. App.2d 506, 510 [75 P.2d 644]; *Fitzpatrick* v. *Metropolitan Life Ins. Co.*, 15 Cal.App.2d 155, 158 [59 P.2d 199].)

■ In discussing the distinction between patent and latent ambiguities and the admissibility of extrinsic evidence as an aid in the construction of a writing, the author of the subject in California Jurisprudence says that there is a third and intermediate class of cases where the words are all sensible and have a settled meaning, but at the same time consistently admit of two interpretations according to the subject matter in the contemplation of the parties. (10 Cal.Jur. § 204, p. 939.) *Jenny Lind Co.* v. *Bower & Co.*, 11 Cal. 194, cited in support of the text, says, page 198: ''The language of every instrument should be so construed, if possible, as to effectuate the intentions of the parties; and to ascertain the meaning attached to particular words, when such words are used in various senses, parol evidence is perfectly legitimate.'' The court held that the word ''north'' was susceptible of more than one meaning and that parol evidence was admissible to show in what sense the parties used the word. (See, also, *Wachs* v. *Wachs*, 11 Cal.2d 322 [79 P.2d 1085]; *Ferris* v. *Emmons*, 214 Cal. 501 [6 P.2d 950]; *Pierson* v. *Bradfield*, 43 Cal.App.2d 519, 524 [111 P.2d 460]; *Norton* v. *Farmers A. Inter-Ins. Exch.*, 40 Cal.App.2d 556 [105 P.2d 136].)

If ''the language employed be fairly susceptible of either one of the two interpretations contended for, without doing violence to its usual and ordinary import, or some established rule of construction, then an ambiguity arises, which extrinsic evidence may be resorted to for the purpose of explaining. This is not allowing parol evidence for the purpose of varying or altering the contract, or of putting a different sense and construction upon its language from that which it would naturally bear, but for the purpose of showing the circumstances under which the language was used, and applying it according to the intention of the parties. 'The true interpretation of every instrument being manifestly that which will make the instrument speak the intention of the party at the time it was made, it has always been considered an exception, or perhaps a corollary, to the general rule above stated, that when any doubt arises upon the true sense and meaning of the words themselves, or any difficulty as to their application under the surrounding circumstances, the sense and meaning of the language may be investigated and ascertained by evidence *dehors* the instrument itself.' '' (*Balfour* v. *Fresno C. & I. Co.*, 109 Cal. 221, 225-226 [41 P. 876].) (See, also, *Union Oil Co.* v. *Union Sugar Co.*, 31 Cal.2d 300, 306, 307 [188 P.2d 470]; *Enos* v. *Armstrong*, 75 Cal.App.2d 663, 668

[171 P.2d 137] ; *Norton* v. *Farmers A. Inter-Ins. Exch.*, 40 Cal.App.2d 556, 565 [105 P.2d 136].)

*Shain* v. *Mutual Benefit, Health & Accident Ass'n*, 232 Iowa 1143 [7 N.W.2d 806], held that where a health and accident policy insured against loss of life, limb, sight or time resulting directly from accidental bodily injury and provided for specific losses, a subsequent provision for indemnity, as for illness for an accidental injury, fatal or otherwise, resulting in "hernia" or enumerated diseases, introduced an ambiguity into the contract which must be construed most favorably to the insured as extending coverage so as not to preclude recovery of death benefit for death resulting from "hernia" caused by an accidental fall.

*Kane* v. *Order of United Commercial Travelers*, 3 Wn.2d 355 [100 P.2d 1036], held that an ambiguity existed in a contract of insurance which insured against accidental death but exempted the insurer from liability for losses caused by an "infection" and that the policy was open to two constructions as to the meaning of the word "infection," one being the meaning to members of the medical profession and the other being the meaning to the minds of laymen. The court held that where it did not clearly appear from the contract that the word was used in a medical sense, it would be presumed that the parties intended the word as it was ordinarily understood by the average person and that the parties did not intend to classify pneumonia as an "infection," although in a medical sense pneumonia is an "infection."

*Stewart* v. *Guarantee Trust Life Ins. Co.*, 321 Ill.App. 588 [53 N.E.2d 476, 478], held that where a special income disability policy excluded arthritis and numerous other maladies from coverage, and where the policy did not distinguish between different kinds of arthritis, an ambiguity existed as to whether "post-operative arthritis" was excluded as well as "pre-existing arthritis." It was held that the policy was not intended to exclude "post-operative arthritis."

*Provident Life & Acc. Ins. Co.* v. *Sims*, (Tex.Civ.App.) 149 S.W.2d 281, held that where a policy provided for payment of $40 a month for not to exceed 12 consecutive months for total disability resulting from external, violent and accidental means, but limited coverage for "hernia" to 14 days, there was a direct conflict between the general coverage and the special coverage which created an uncertainty and ambiguity. It was held that the general provision controlled and that the

insured who suffered a "hernia" was entitled to $40 a month for the duration of disability not to exceed 12 months.

■■ The evidence *dehors* the contract was this: An "esophageal hiatus diaphragmatic hernia" is of rare occurrence. The ratio of "inguinal hernias" to "esophageal hiatus diaphragmatic hernias" is about one thousand to one. An operation for the latter is an unusual type of surgery and there are few surgeons qualified to perform it. An operation for an "esophageal hiatus diaphragmatic hernia" is only performed by specialists. The operation on respondent involved removal of a rib, collapsing of a lung, and required about two hours to perform. An "esophageal hiatus diaphragmatic hernia" is not to be compared with an "inguinal hernia." A "hernia" ordinarily projects into another cavity. The "hernia" sustained by Pendell was a sliding "hernia." It did not go into another cavity. The diaphram was not ruptured. The medical profession has been diagnosing this type of "hernia" only since about 1920.

Further it may be reasonably inferred from the contract itself and from the parol evidence that the surgical fee provided in the contract for an operation for "hernia" did not embrace within its scope an operation for an "esophageal hiatus diaphragmatic hernia." As stated, the fee schedule read: "Hernia—Cutting operation for radical cure of Single hernia . . . 50.00 More than one hernia . . . 75.00." "Radical cure" means surgical cure of the "hernia" in contrast to wearing a truss or other manipulated procedures. A double "hernia" is an indirect and direct "inguinal hernia" on the same side. A double "esophageal hiatus diaphragmatic hernia" is almost an impossibility. The fact that the surgical fee schedule specifies a "single hernia" implies a "hernia" of the inguinal type. A physician testified that the word "hernia" as used in the "Surgical Fees Rider" connotes the common "inguinal hernia."

Appellant refers us to a number of definitions of "hernia" as used by lexicographers and in medical works. (*Webster's New International Dict.* (2d ed.); *Funk & Wagnall's New Standard Dict.*; *Amer. Illus. Med. Dict.* (15th ed.) 554; *Maloy, Legal Anatomy and Surgery,* 571; *Gray, Attorney's Textbook of Medicine* (2d ed.) 771.) The definitions do not help appellant. As we have indicated, the word "hernia" is to be construed in its popular sense; it is to be taken as an average person, with usual and ordinary intelligence, would understand it, rather than in its technical or scientific sense

as defined or used by lexicographers or persons skilled in the niceties of language. (44 C.J.S. § 294, p. 1156.)

The 1927 Pennsylvania Workmen's Compensation Law provided that ''[h]ernia shall be considered as a physical weakness or ailment . . .'' In *Berner* v. *Philadelphia & R. C. & I. Co.,* 100 Pa.Super. 324, 329, it was held that the Legislature used ''the term 'hernia' in a popular, rather than in a surgical, sense and as implying a noticeable protrusion from some part of the abdominal cavity . . .'' In *Pollock* v. *Clairton Schl. Dist.,* 100 Pa.Super. 333, Pollock sustained a ''strangulated intestinal hernia.'' Referring to the Berner case, the court stated, page 338: ''That was a case of ordinary inguinal hernia to which the amendment [1927 Law] clearly applied. In a surgical sense, hernia includes not only the protrusion of parts of the viscera from the abdominal cavity but also of any soft interior organ from its normal cavity, as a hernia of the brain, lung or eye, and of course includes an intestinal hernia of the type disclosed by the operation described in this case. But when the use by the legislature of the word 'hernia' is considered in the light of all the provisions of the amendment, we think it is clear that it did not intend to bring within the scope of the operation of the amendment any hernias other than the ordinary hernias, or 'ruptures,' which gives evidence of their occurrence by a protrusion from some part of the abdominal cavity. We are of opinion that the amendment was not intended by the legislature to apply to a hernia of the kind shown by the evidence in this case to have been accidentally suffered by claimant's husband in the course of his employment and to have been the direct cause of his death.'' *Pastva* v. *Forge Coal Mining Co.,* 119 Pa.Super. 455 [179 A. 919, 921], where the plaintiff sustained an ''intra-abdominal hernia,'' is to the same effect. (See, also, *Tenaro* v. *Keasby & Mattison Co.,* 151 Pa.Super. 598 [30 A.2d 626].)

*Royal Indemnity Co.* v. *Jones,* (Tex.Civ.App.) 201 S.W. 2d 129, held that a ''hernia nuculeus pulposus'' was not a ''hernia'' within the meaning of the Texas Workmen's Compensation Act, the court saying, page 132: ''In *Lewis* v. *American Surety Co.,* 143 Tex. 286, 184 S.W.2d 137, 139, the broad definition of hernia is set out, but the Court said: 'While the definition of hernia includes any and all protrusions of an internal organ from its natural location, it is evident that that term was used by the Legislature in its popular sense in the compensation statutes. Should an employee, for example, suf-

fer an injury in the course of his employment producing a hernia of the brain, it is not believed that his right, or that of his beneficiaries, to recover compensation therefor should be limited and controlled by the specific provisions of the hernia statute. They cannot be made to apply practically to such an injury.' ''

In *Furferi* v. *Pennsylvania R. Co.*, 117 N.J.L. 508 [189 A. 126, 130], the court observed that a special provision in the New Jersey Compensation Act was in the nature of an exception, and, by the same token, was to be strictly construed, and that ''A case not within its precise letter is to be excluded.'' (*Berry* v. *United Commercial Travelers of America*, 172 Iowa 429 [154 N.W. 598, Ann.Cas. 1918A 706, L.R.A. 1916B 617], held that loss of time due to an operation to relieve a ''hernia'' caused by a fall was covered by a policy of insurance against loss of time on account of bodily injury effected through external, violent, and accidental means although the policy provided that the payments authorized did not cover loss resulting from or in consequence of ''hernia.'' Appleman in Insurance Law and Practice (vol. 1, § 443, p. 547) says that ''the tendency of the courts has been to hold that where the policy excludes liability for injury or death resulting from hernia that if the hernia resulted directly from accidental means, the insurer would not be relieved of liability.''

Respondent sustained an ''esophageal hiatus diaphragmatic hernia'' as a result of an accident. He was insured against the accident by the general provisions of the contract. Had he sustained a ''hernia'' not resulting from an accident, appellant might not have been liable. But when the ''hernia'' is the result of an accident it cannot be regarded as within the exclusion clause. A ''hernia'' may result from bodily disease or from trauma. (*Bige* v. *Industrial Acc. Com.*, 105 Cal.App. 210 [287 P. 577]; *National Auto Ins. Co.* v. *Industrial Acc. Com.*, 139 Cal.App. 414 [34 P.2d 163]; Campbell, Workmen's Compensation, vol. 1, §§ 303, 305, p. 295.) The contract distinguished between accidental ''bodily injury'' and ''bodily disease.'' It called ''bodily disease'' ''such sickness'' and said that ''hernia'' should be classified as ''such sickness.'' The ''hernia'' sustained by respondent was the result of accidental ''bodily injury'' and not the result of ''bodily disease.'' The object of respondent in making the contract was to secure compensation in case of nonoccupational accidental bodily

injury. The contract insured against that hazard. That the contingency against which he insured did happen, resulting in bodily injury, is uncontradicted; that the bodily injury was received by accident, is conceded. The exclusion clause did not limit the indemnity under these facts. (See *Travelers' Ins. Co.* v. *Murray*, 16 Colo. 296 [26 P. 774, 25 Am.St.Rep. 267]; *Atlanta Accident Ass'n* v. *Alexander*, 104 Ga. 709 [30 S.E. 939, 42 L.R.A. 188]; *Thornton* v. *Travelers' Ins. Co.*, 116 Ga. 121 [42 S.E. 287, 94 Am.St.Rep. 99]; *Summers* v. *Fidelity Mut. Aid Ass'n*, 84 Mo.App. 605; anno.: 8 L.R.A.N.S. 1014; L.R.A. 1916B 621.)

We conclude that the word "hernia" as used in the policy is uncertain and ambiguous, that extrinsic evidence was properly considered to aid the court in construing the contract, and that the finding that the parties did not intend to include an "esophageal hiatus diaphragmatic hernia" within the meaning of the word "hernia" as used in the policy, is supported by the evidence.

Appellant assigns as error the admission in evidence, over its objection, of a specimen of a "Surgical Operation Fees Rider" to nonoccupational health and accident policies, issued by it in April, 1946 (after respondent's accident), upon payment by an insured of an additional premium, which rider lists, among other operations for which it would pay the actual expenses incurred therefor but not exceeding the amount set forth in the operation schedule, the following: "Hernia—repair of: Femoral.... 40.00  Inguinal.... 40.00 Ventral.... 40.00  Umbilical.... 40.00  Scrotal.... 40.00 Double Hernia.... 50.00." It will be observed that an "esophageal hiatus diaphragmatic hernia" is not listed. Respondent claims, as he did at the trial, that this specimen was properly admissible in evidence as an admission against interest indicating an intention on the part of appellant not to include an "esophageal hiatus diaphragmatic hernia" in the meaning of the word "hernia" as used in its 1943 contract.

An admission is "[A] statement, oral or written, suggesting any inference as to any fact in issue, or relevant, or deemed to be relevant, to any such fact made by or on behalf of any party to any proceeding." (*Smith* v. *Whittier*, 95 Cal. 279, 296 [30 P. 529].) The declaration of a party to be admissible against him must tend to prove the fact in issue. (*Hall* v. *Bark "Emily Banning,"* 33 Cal. 522, 524.) It must be relevant to, and have a material bearing on, the issues in the case. (31 C.J.S. § 276, p. 1028; 20 Am.Jur. § 545, p. 461.)

It must concern the subject matter of the controversy. (*Pece v. Tama Trading Co.*, 22 Cal.App.2d 219, 223 [70 P.2d 652].) A declaration which does not, under any reasonable construction, appear to admit or acknowledge the fact which is sought to be proved by it is not competent as an admission. (31 C.J.S. § 277, p. 1029.)

■ We are of the opinion that admission of the 1946 rider in evidence was error. The only purpose served by that rider was to bind the company after April, 1946, to pay benefits upon the performance of specified operations for "hernia" in exchange for an additional premium to be paid by an insured desiring these additional benefits. It was another and different contract. It cannot be seriously contended that this evidence shows any admission, express or implied, that appellant did not intend to include an "esophageal hiatus diaphragmatic hernia" in the meaning of the word "hernia" as used in its 1943 contract. It is common knowledge that insurance companies issue a great variety of policies and riders and frequently change them from time to time and also from time to time offer additional benefits for additional premiums. Contracts "must be so interpreted as to give effect to the mutual intention of the parties *as it existed at the time of contracting.*" (Civ. Code, § 1636.) (Italics added.) The purpose of interpreting a writing is to ascertain the intention of the parties at the time the writing was made. The action taken by appellant in 1946 with respect to the amount it would pay for specified "hernia" operations has no bearing and does not shed any light on what was intended by the word "hernia" as used by it in its 1943 contract.

We do not think the error in admitting the 1946 specimen in evidence was prejudicial or resulted in a miscarriage of justice. Appellant did not introduce any evidence but rested on the contract. If the 1946 specimen helped respondent at all, which is doubtful, it was merely cumulative. The contract on its face, plus the evidence we have related, exclusive of the 1946 specimen, fully support the findings.

Affirmed.

Shinn, P. J., and Wood, J., concurred.