TRESEA PERSCHALL, Plaintiff-Appellee, *v.* METROPOLITAN LIFE INSURANCE COMPANY, Defendant-Appellant.
Fourth District   No. 4—82—0411

Opinion filed March 7, 1983.

234

William S. Bach, of Bach & Laudeman, Ltd., of Bloomington, for appellant.

James Walker, Ltd., of Bloomington, for appellee.

JUSTICE MILLS delivered the opinion of the court:
Disability insurance claim.
"Vexatious" delay in benefits?
The trial court so held.
We affirm.

Tresea Perschall brought this action for insurance benefits under a group disability policy issued by Metropolitan Life. In addition to the claim for disability benefits, she sought punitive damages for defendant's alleged "vexatious and unreasonable" delay in meeting its obligations under the policy. Following a jury trial, the trial court entered judgment on the verdict against the defendant for $9,369.21 in actual damages, allowed attorney's fees and ordered punitive damages equal to 25% of the verdict.

The crucial facts are not in dispute. Plaintiff was covered by a group long-term disability insurance policy issued by the defendant. Benefits were payable under this policy during an insured's "total disability." By the terms of the policy, an insured is deemed totally disabled during his first 12 months of absence if he is "unable, because of illness or injury, to perform any and every duty of his occupation." For absence beyond the first 12 months, however, an insured is entitled to disability benefits if he is, "because of illness or injury, unable to engage in any gainful occupation for which he is reasonably fitted by education, training or experience and is under the care of a physician, if necessary, for any treatment of his disability."

Plaintiff was employed in light assembly at General Electric Company at the onset of her disability. Beginning June 21, 1977, she absented herself from her job for an extended period due to pain and swelling in her right hand and wrist. It is undisputed that plaintiff received disability benefits under the group policy for 12 months following her departure from work, i.e., from June 21, 1977, until June 21, 1978. After that period, however, the defendant repeatedly denied plaintiff's request for benefits.

The evidence showed that Dr. Seymour Goldberg served as plaintiff's family physician from 1966 until some time in 1978. The doctor testified that he treated plaintiff for the wrist condition on June 24, 1977, and told her then to stay off work. He saw her periodically until her final office visit on October 17, 1978. According to Dr. Goldberg, the prescription for plaintiff's medication would have supplied her until the end of 1978. He stated that she could have refilled the prescription beyond that date without his personal knowledge.

In a letter to plaintiff's employer, dated July 5, 1978, Dr. Goldberg indicated that plaintiff would never be capable of gainful employment again. In a second letter, dated October 2, 1978, he again expressed that opinion and diagnosed plaintiff's illness as rheumatoid arthritis. At trial, the doctor recanted this opinion and diagnosis, stating that the diagnosis was never proved and that plaintiff would be capable of sedentary employment.

On January 23, 1980, plaintiff first saw Dr. Chaiyakiati Napombejara, a specialist in rheumatology. On that date the doctor observed tenderness and inflammation in plaintiff's hands, wrists and feet. Based in part on Dr. Goldberg's records of plaintiff's past condition, Dr. Napombejara diagnosed plaintiff's illness as rheumatoid arthritis. He continued to see plaintiff on a regular basis and prescribed new medication to treat her condition. Within six months, the pain and stiffness in plaintiff's joints had improved substantially, and the doctor released her to return to work on June 18, 1980.

I. On appeal, defendant contends that the trial court erred in refusing to grant a motion for directed verdict made at the end of the plaintiff's evidence, because plaintiff did not establish that she was under the care of a physician after June 21, 1978, and as such, the proof of her total disability was insufficient. We find that this issue has not been properly preserved for appeal. The denial of the motion for directed verdict is waived, first, because defendant proceeded to produce evidence of its own following the denial of the motion. (*Lynn v. Lynn* (1960), 21 Ill. 2d 131, 133, 171 N.E.2d 53, 55; see *People ex rel. Kubala v. Woods* (1972), 52 Ill. 2d 48, 54, 284 N.E.2d 286, 290.) Secondly, defendant failed to avail itself of the opportunity to reassert the motion at the end of all the evidence. See *Crum v. Krol* (1981), 99 Ill. App. 3d 651, 658, 425 N.E.2d 1081, 1086; *Goldberg v. Capitol Freight Lines, Ltd.* (1942), 314 Ill. App. 347, 352, 41 N.E.2d 302, 305.

Even if this issue were properly before this court, reversal would not be required. Plaintiff testified that she could not recall the exact date of her last office visit with Dr. Goldberg, but she indicated that it could have been as late as October 17, 1978. In this court, defendant concedes that plaintiff saw Dr. Goldberg on that date. Plaintiff also testified that she continued using the prescription medicine given to her by Dr. Goldberg into 1979. She followed the doctor's directions to stay off work until early 1980. This evidence would establish *prima facie* proof that plaintiff was under the care of a physician after June 21, 1978.

Defendant disputes that plaintiff's use of prescription medicine without more does not constitute "care of a physician" within the

meaning of the policy. As we have indicated, however, the evidence did show more. Further, any ambiguity in the policy language would be construed in favor of the insured. *Menke v. Country Mutual Insurance Co.* (1980), 78 Ill. 2d 420, 423, 401 N.E.2d 539, 541; *Kirk v. Financial Security Life Insurance Co.* (1978), 75 Ill. 2d 367, 371, 389 N.E.2d 144, 145.

   II. As additional grounds for reversal, defendant contends that plaintiff's medical expert should not have been permitted to give his opinion on plaintiff's ability to perform gainful employment. Several theories are advanced in support. *First,* defendant argues that the opinion should not have been admitted, because it concerned an ultimate issue which was not beyond the comprehension of the jury. We are not persuaded that this is an accurate statement of the applicable rule. Although the opinion in *Arnold N. May Builders, Inc. v. Bruketta* (1978), 60 Ill. App. 3d 926, 377 N.E.2d 579, suggested that testimony on ultimate issues is admissible only upon subjects beyond the understanding of the average juror, that analysis was based upon what is now outdated law. It is now well established that an expert may directly express his opinion on an ultimate issue. (*Merchants National Bank v. Elgin, Joliet & Eastern Ry. Co.* (1971), 49 Ill. 2d 118, 122, 273 N.E.2d 809, 811.) More recently, this court noted in *Binge v. J. J. Borders Construction Co.* (1981), 95 Ill. App. 3d 238, 419 N.E.2d 1237, that the modern standard for the admissibility of expert testimony is not whether the subject is beyond the understanding of the jury, but whether the testimony will aid the jury's understanding. No higher standard applies to opinion testimony on an ultimate issue. E. Cleary & M. Graham, Handbook of Illinois Evidence sec. 704.1, at 375-76 (3d ed. 1979); 2 Jones, Evidence sec. 418, at 789 (5th ed. 1958).

   *Second,* defendant argues that the doctor's opinion of plaintiff's disability should not have been admitted, because it constituted a legal conclusion. This contention is also without merit. The doctor was asked whether plaintiff was "totally disabled," the latter term defined as "the inability due to illness or injury to perform any gainful occupation for which [plaintiff] had education, training and experience." Although this was the definition of total disability stated in the insurance policy, the incorporation of that definition in the question posed to the doctor did not transform his response into a legal opinion.

   *Third,* while acknowledging that an expert may base his opinion on facts not admitted nor admissible in evidence (see *Wilson v. Clark* (1981), 84 Ill. 2d 186, 417 N.E.2d 1322), defendant argues that

the opinion given by plaintiff's expert lacked a factual basis. The evidence shows that Dr. Goldberg last saw plaintiff on October 17, 1978, and that plaintiff's medical expert, Dr. Napombejara, first saw plaintiff on January 23, 1980. The question related to plaintiff's condition during the interim. Although the expert had no direct information on that period, he stated that he relied upon Dr. Goldberg's records and his own personal observations. Dr. Goldberg's records supplied him with information relating to the nature of plaintiff's disease and her condition immediately preceding the period in question. His personal observations informed him of plaintiff's condition immediately subsequent to that period. These facts provided a suitable foundation for the doctor's professional assessment of plaintiff's disability during the period she was not seen by a physician.

■ *Fourth,* defendant challenges the admission of the expert's opinion on the grounds that the doctor lacked sufficient qualifications to give an opinion on plaintiff's employment potential. Dr. Napombejara's medical qualifications were never challenged and it was established that he specialized in rheumatology. The record shows that the doctor made professional determinations of plaintiff's ability to work during the course of her treatment. The question, which sought the doctor's opinion whether plaintiff was capable of any gainful occupation, went to plaintiff's physical abilities rather than specific vocational requirements. The trial court did not err in allowing the doctor to answer the question on the basis of his medical qualifications.

III. Defendant also specifically challenges the imposition of punitive damages. Both the complaint and amended complaint in this case sought attorney fees and punitive damages under section 155 of the Illinois Insurance Code (Ill. Rev. Stat. 1981, ch. 73, par. 767). Upon entering judgment on the verdict, the trial court made no findings under the statute. Subsequently, plaintiff moved the court to find defendant's delay "vexatious and unreasonable" and to grant relief under section 155. The trial court conducted a hearing on the motion and offered the parties an opportunity to present evidence. Neither party presented additional evidence, and the trial court expressly decided the question on the basis of the evidence introduced at trial and the arguments on the motion. The court found that defendant's delay in paying benefits was unreasonable and vexatious. Pursuant to section 155, the court allowed attorney fees and punitive damages equal to 25% of the verdict.

■ Defendant asserts, without citation of authority, that the question presented under section 155 should have been submitted to the jury. The language of the statute itself and the case law clearly

contradict this assertion. (See *Stewart v. Guarantee Trust Life Insurance Co.* (1944), 321 Ill. App. 588, 53 N.E.2d 476.) The trial court did not err in failing to submit the question to the jury.

Defendant further asserts that there was not sufficient evidence to support the court's finding of unreasonable and vexatious delay. Black's Law Dictionary 1403 (5th ed. 1979), defines *vexatious* as "[w]ithout reasonable or probable cause or excuse." Although we agree that the question is a close one, we find no justification for reversal. The applicable standard of review would permit reversal only if we find that the trial court abused its discretion. (*Deverman v. Country Mutual Insurance Co.* (1977), 56 Ill. App. 3d 122, 371 N.E.2d 1147; *Songer v. State Farm Fire & Casualty Co.* (1980), 91 Ill. App. 3d 248, 414 N.E.2d 768.) There is sufficient support for the trial court's determination of "vexatious and unreasonable" delay to preclude a finding of abuse on review.

Plaintiff testified, and defendant admitted in its answer, that plaintiff received benefits under the policy for 12 months, *i.e.,* from June 21, 1977, to June 21, 1978. Defendant also formally admitted that it ceased payments to plaintiff on June 21, 1978, and refused her subsequent requests for benefits under the policy. There is no evidence as to whether defendant explained the basis for this refusal of benefits. The policy, which was admitted in evidence, requires an insured to apply for benefits only once, although the criteria for payment of benefits changes after the first 12 months of disability. By terms of the policy, the defendant reserved the right to medically examine the insured and to require proof of continued disability, but there is no evidence that such information was sought by defendant.

Defendant terminated benefits on June 21, 1978. Yet, the testimony of plaintiff and Dr. Napombejara showed clearly that plaintiff's condition did not show signs of improvement until 1980. Her condition immediately before and after defendant's termination of benefits was identical. Also, the testimony of plaintiff and Dr. Goldberg showed that she remained under the care and treatment of Dr. Goldberg at least until October 17, 1978. This latter fact was conceded by defense counsel at trial in closing argument. It is evident that defendant did not terminate benefits on June 21, 1978, because it believed that plaintiff had been cured or had removed herself from the care of her physician. Moreover, in letters dated July 5, 1978, and October 2, 1978, Dr. Goldberg informed plaintiff's employer that plaintiff was incapable of gainful employment.

■ The foregoing evidence presented an adequate factual basis for the trial court's award of attorney fees and punitive damages un-

der section 155. It should be noted that defendant was afforded the opportunity to present evidence on the question but the opportunity was declined. Defendant objected orally when the motion was presented but offered no support for its position other than argument. Although this court might have reached a different conclusion on the basis of the evidence presented, that is not the standard by which we review the alleged error. The trial court could legitimately have concluded that plaintiff supported her burden of proof on this issue.

The record reveals no abuse of discretion in this matter nor any other. Accordingly, we affirm.

Affirmed.

GREEN and MILLER, JJ., concur.